RECEIVED
U.S. COURT OF APP
10TH CIRCUIT
2017 APR 10  AM 11:

# No. *17*-3046

---

## United States Court of Appeals

## for the Tenth Circuit

---

**ERIC S. CLARK, JONATHAN CLARK**

Plaintiffs-Appellants

**v.**

**CITY OF SHAWNEE, KANSAS**

Defendant-Appellee

---

Appeal from the U.S. District Court

for the District of Kansas

The Honorable Sam A. Crow, District Judge

( 5:15-cv-04965-SAC )

---

**BRIEF OF APPELLANT**

---

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904
**Jonathan Clark ( pro se )**
6800 Maurer Road
Shawnee, Kansas 66217
Phone: (913) 951-6425

ORAL ARGUMENT

ii

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1,

Plaintiffs-Appellants hereby state that no corporation is involved

concerning the Appellants of this case.

iii

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................... ii

TABLE OF CONTENTS ......................................................... iii

TABLE OF AUTHORITIES .......................................................... vi

PRIOR OR RELATED APPEALS ……………………………….. x

JURISDICTIONAL STATEMENT ............................................. 1

STATEMENT OF THE ISSUES ................................................. 1

STATEMENT OF THE CASE ....................................................... 3

SUMMARY OF ARGUMENT ...................................................... 4

ARGUMENT ……………………………………………………… 9

**I.** The district court committed reversible error by granting Defendant's motion for summary judgment [Dk. 108]

9

A) The district court erred by finding the City carried its burden to produce sufficient evidence in support of its objectives and; erred by making a determination about "the scope" of the right to keep and bear arms by use of a review exception (rational basis) which swallows the rule (review of scope subject to heightened scrutiny).

27

B) The district court erred in its finding of lack of standing for Plaintiff Eric Clark.

iv

38

C) The district court erred by finding that the City's
Ordinance was not preempted by State law based
on an improper interpretation of State law.

41

D) The district court erred on the issue of when facial
challenges may be made to a criminal Ordinance
which implicates constitutional provisions
including an enumerated fundamental right (as
opposed to statutory provisions) and; the district
court erred by not identifying and using the proper
review standards for each of the various challenges
and; the district court erred by misapprehending
the Due Process challenge and dismissing it as
duplicative and; the district court erred by failing
to perform a facial equal protection analysis of the
Ordinance, thus failing to address when one's
home is an RV and; the district court erred in its
equal protection analysis for "similarly situated"
persons, thus failing to address a difference in
treatment of similarly situated persons based solely
upon the person stating one certain personal desire.

50

E) The district court either erred by finding that the
Ordinance did not implicate the core of the Second
Amendment right (i.e., firearm operable for
immediate self defense at hearth and home) and
thus subject to strict scrutiny rather than
intermediate scrutiny or; the district court erred by
failing to find that the criminal Ordinance was void
for vagueness.

v

CONCLUSION ……………………………………….... 53

REQUEST FOR ORAL ARGUMENT .…………………………... 54

CERTIFICATE OF COMPLIANCE WITH PRIVACY ………..... 55

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ………... 56

CERTIFICATE OF SERVICE ………………………………..… 57

vi

# TABLE OF AUTHORITIES

## U.S. CONSTITUTION

U.S. Const., amend I

U.S. Const., amend II

U.S. Const., amend IV

U.S. Const., amend V

U.S. Const., amend XIV

## FEDERAL SUPREME COURT CASES

*Aptheker v. Secretary of State*, 378 U.S. 500 (1964)

*Babitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)

*Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)

*City of Chicago v. Morales*, 527 U.S. 41 (1999)

*Connally* v. *General Constr. Co.*, 269 U. S. 385 (1926)

*District of Columbia v. Heller*, 554 U.S. 570 (2008)

*Dred Scott v. Sanford*, 60 U.S. (19 How.) 393 15 L. Ed. 691 (1857)

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)

*Giaccio v. Pennsylvania*, 382 U.S. 399 (1966)

*Johnson v. United States*, 135 S. Ct. 2551 (2015)

*Kolender* v. *Lawson*, 461 U. S. 352 (1983)

vii

*Lamar v. Micou*, 114 U.S. 218 (1885)

*Los Angeles v. Patel*, 576 U.S. ___ (2015)

*Luis v. United States*, 578 U.S. ____ (2016)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*McDonald v. Chicago*, 561 U.S. 742 (2010)

*Muscarello v. United States*, 524 U.S. 125 (1998)

*NAACP v. Button*, 371 U.S. 415 (1963)

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992)

*Robertson v. Baldwin*, 165 U.S. 275 (1897)

*Sabri v. United States,* 541 U.S. 600 (2004)

*Susan B. Anthony List v. Driehaus*, 573 U.S. ___ (2014)

*Thornhill v. Alabama*, 310 U. S. 88 (1940)

*United States v. Salerno*, 481 U.S. 739 (1987)

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008)

*Younger  v. Harris*, 401 U. S. 37 (1971)

viii

**FEDERAL TENTH CIRCUIT**

*Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir. 1980)

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006)

*Kerr v. Hickenlooper*,  10th Cir. No. 12-1445 filed June 3, 2016

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013)

*United States v. Dorris*, 236 F.3d 582 (10th Cir. 2000).

*Ward v. Utah*, 398 F.3d 1239 (10th Cir. 2005)

*Wilson v. Stocker*, 819 F.2d 943 (10th Cir. 1987)

*Winsness v. Yocom*, 433 F.3d 727 (10th Cir. 2006)

**OTHER FEDERAL CIRCUITS**

*Drake v. Filko*, 724 F.3d 426 (3rd Cir. 2013), cert. denied, 134 S. Ct. 2134 (2014)

*Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 95 (2d Cir. 2012)

*Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)

*New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8 (1st  Cir. 1996)

*Peruta v. Cty. of San Diego*, 824 F.3d 919 (9th Cir. 2016) (en banc)

*United States v. Decastro,* 682 F.3d 160 (2d Cir. 2012)

*U.S. v. Skoien*, Seventh Circuit No. 08-3770 (2010)

ix

## FEDERAL DISTRICT COURTS WITHIN TENTH CIRCUIT

D. Colo. No. 1:10-cv-00059-WDM-MEH, Dk. 45

D. Colo. No. 1:11-cv-01350-RM-NYM, Dk. 151

*Hartford v. Gibbons & Reed Co.*, 617 F.2d 567 (10th Cir. 1980)

*Peterson v. LaCabe*, 783 F. Supp. 2d 1167 (D. Colo. 2011)


## OTHER FEDERAL DISTRICT COURTS

*Masciandaro*, 648 F. Supp. 2d 779 (E.D. Va. 2009)

*Davis v. Grimes*, 9 F. Supp. 3d 12 (D. Mass. 2014)


## STATE OF KANSAS

*Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*,
    292 Kan. 285, 294, 255 P.3d 1186 (2011)

*Claflin v. Walsh*, 212 Kan. 1, 7, 509 P.2d 1130 (1973)

*City of Junction City v. Lee*, 216 Kan. 495, 501, 532 P.2d 1292 (1975)

*Moore v. City of Lawrence*, 232 Kan. 353 (1982)

Kan. S.Ct. No. 100,445

x

**OTHER STATES**

*Andrews v. State*, 50 Tenn. 165 (1871)

*Aymette v. State*, 21Tenn. 154 (1840)

*Bliss vs. The Commonwealth*, 2 Littell's Rep. 90 (Ky. 1822)

*Commonwealth v. Blanding*, 20 Mass. (3 Pick.) 304 (1825)

*Nunn v. State*, 1 Kelly 243 (Ga. 1846)

*Smith v. State*, 42 Tex. 464 (Tex. 1875)

*State v. Mitchell*, 3 Blackf. 229 (Ind. 1833)

*State v. Nieto*, 101 Ohio 409, 130 N.E. 663 (1920)

**OTHER AUTHORITIES**

Kansas Statutes Annotated (K.S.A.) 12-16,124

Kansas Attorney General opinion 1982-228

## PRIOR OR RELATED APPEALS

There are no prior or related appeals concerning this case.

# JURISDICTIONAL STATEMENT

This Court of Appeals has jurisdiction over this case pursuant to 28 U.S.C. § 1291.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331(federal question).

The instant appeal arises from a final decision of the district court. See Order [Dk. 140] and Entry of Judgment [Dk. 141] each dated January 5, 2017.

Plaintiffs-Appellants timely appealed on February 28, 2017 [Dk. 161].

# STATEMENT OF THE ISSUES

**I.** The district court committed reversible error by granting Defendant's motion for summary judgment [Dk. 108].

**A)** The district court erred by finding the City carried its burden to produce sufficient evidence in support of its objectives and; erred by making a determination about "the scope" of the right to keep and bear arms by use of a review exception (rational basis) which swallows the rule (review of scope subject to heightened scrutiny).

**B)** The district court erred in its finding of lack of standing for Plaintiff Eric Clark.

**C)** The district court erred by finding that the City's Ordinance was not

preempted by State law based on an improper interpretation of State law.

**D)** The district court erred on the issue of when facial challenges may be made to a criminal Ordinance which implicates constitutional provisions including an enumerated fundamental right (as opposed to statutory provisions) **and**; the district court erred by not identifying and using the proper review standards for each of the various challenges **and**; the district court erred by misapprehending the Due Process challenge and dismissing it as duplicative and; the district court erred by failing to perform a facial equal protection analysis of the Ordinance, thus failing to address when one's home is an RV and; the district court erred in its equal protection analysis for "similarly situated" persons, thus failing to address a difference in treatment of similarly situated persons based solely upon the person stating one certain personal desire.

**E)** The district court **either** erred by finding that the Ordinance did not implicate the core of the Second Amendment right (i.e., firearm operable for immediate self defense at hearth and home) and thus subject to strict scrutiny rather than intermediate scrutiny **or**; the district court erred by failing to find that the criminal Ordinance was void for vagueness.

2

# STATEMENT OF THE CASE

The district court granted the Defendant's summary judgment motion [Dk. 140, p. 43] This appeal followed for review of the ruling of that Order[Dk. 140], "that the City's motion for summary judgment (Dk. 108) is granted." (See Dk. 140, p. 43) That ruling was essentially divided into two parts, **i)** the issue of standing and **ii)** the issue of constitutionality of the City's Ordinance.

**i)**     The issue of standing. See Dk. 140, p. 13, "Eric's alleged injuries are merely conjectural and hypothetical and will not satisfy the injury-in-fact requirement." And see Dk. 140, p. 14, "plaintiff Eric cannot satisfy the injury-in-fact requirement for standing on His Second Amendment claim for compensatory damages."

This issue relied upon an errant treatment of factual allegations supported by affidavit (See Dk. 140, p. 7, "Eric's filings are replete with his conjecture over fears, apprehensions, threats and injuries that this ordinance caused him during this nine-month period.") by treating the factual allegations as conjecture rather than taking them as "true" which the district court acknowledged should be done. See Dk. 140, p. 9, "which for purposes of the summary judgment motion **will be taken to be true**."). (emphasis added)

3

**ii)** The issue of constitutionality of the City's Ordinance. See Dk. 140, p. 14,

    **"COUNTS 2-4**   These three counts turn on the constitutionality of the

    City's firearm Ordinance."

        There are numerous errors in the analyses related to this issue, but

most are subsidiary to the errant conclusion of law that "there is no Second

Amendment right for members of the public to transport loaded and non-

encased firearms in their vehicles without a concealed carry permit."  See

Dk. 140, p.36.

## SUMMARY OF ARGUMENT

        In addition to as-applied challenges, Plaintiffs argued various ways that the

Ordinance is null and void, including for being preempted by State law and for

being facially unconstitutional under various provisions of the Constitution.

An improper interpretation (error of law) of the Ordinance occurs if it is not

interpreted as it would be interpreted by the State's courts. (See also motion to

certify a question of State law filed contemporaneously with this brief.)

        As for the various challenges under constitutional provisions, Plaintiffs

asserted that the Ordinance is facially unconstitutional for being violative

of either Equal Protection or Due Process (i.e., flip side of the argument) – failing

Equal Protection due to different treatment of similarly situated persons and,

if, instead, the persons are held to be similarly situated then it fails Due Process

concerning the First, Fourth, and Fifth Amendment (not Second Amendment).

The district court erred by treating the Due Process challenge as duplicative of a Second Amendment challenge but the Due Process affects separate liberty interests than the right to keep and bear arms – e.g., the right to be free from unreasonable seizure(imprisonment) and; the liberty to abstain(remain silent) from committing perjury – which is an implication of either freedom of speech or the right against self incrimination, both protected by Due Process.

The district court also erred by an improper determination about when facial challenges are appropriate, which apparently lead to the district to address only certain portions (as-applied?) of the Equal Protection challenge. Errantly finding that all facial challenges were inappropriate, the district court completely avoided the argument that the Ordinance is unconstitutional because of the discrete group who make their home in a Recreational Vehicle ("RV") upon the public road within the City (See Dk, 120, p. 19 and Dk. 128-1, pp. 6-7) - being violative of the core of the right expressed in *District of Columbia v. Heller*, 554 U.S. 570 (2008).

The district court also erred on both steps of the Second Amendment analysis standard as used by the Tenth Circuit jurisprudence (i.e. standards of interpretation). First, it was the burden of the City to show that carrying firearms in vehicles falls outside of "the scope" of the Second Amendment but no evidence of historical restrictions on carrying firearms in vehicles was presented. Second,

5

it was the burden of the City to show that the Ordinance advanced objectives of the City, but the only evidence presented applied nationwide and did not pertain specifically to the City's jurisdictional area.

Most errors raised in this appeal appear to relate to, or result from, the errant finding of the district court about "the scope" of the Second Amendment for which the district court indicated reliance on *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) for making that holding.  See Dk. 140, p. 30:

> "the Tenth Circuit holding that rejects a Second Amendment right to carry a concealed weapon. The Tenth Circuit in *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013), […]"

And when one's vehicle *is* one's home upon the streets of the City, that holding directly contravenes the central Supreme Court holding in *Heller*.

Would a girl lose her right to have a loaded firearm in her home(i.e., her van) for self protection just because she lives(i.e., makes her home) in the public sphere?

See, e.g., http://www.youtube.com/watch?v=9DISFZM14xEp

Based on *Peterson* (as understood by the district court), the answer would be …

Yes, she loses her core Second Amendment right because of choosing to make her home in a vehicle on the streets of the City. One small step (i.e., *Peterson* ) which may, or may not, have been properly understood by the district court, should not stand as sufficient basis for leaping over the constitutional protections of an

6

enumerated fundamental right. Even if *Peterson* did not create an exception

which swallows the rule ( i.e., the rule of *Heller* that rational basis review cannot

satisfy Second Amendment scrutiny ), the district court certainly did use an

exception (rationalization of "the scope") which clearly did swallow the rule.

That errant holding by the district court apparently relied solely upon the holding

in *Peterson* as being a bright line rule – or worse, is a bright line rule which itself

was derived by an exception that swallowed the rule.

   The district court referred to "'specifically identified as valid in Heller."

*United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011)' [Dk. 140, p. 35]

but that is misleading statement by the *Masciandaro* court, at best, because while

*Heller* indicated that some restriction on concealed carry are **presumptively valid,**

that is **not** an identification (declaration) **of validity**.  Presumptions are used to

shift the burden of proof and the evidence may not be as broadly applicable to the

same legal analysis under different facts or circumstances.

   Plaintiffs pray this Court will clarify that no bright line rule was laid

in *Peterson* but rather the holding was addressing the specific facts and arguments

in play – because if *Peterson* is read broadly, as its seemingly unambiguous

statement intimates that it should, then the "historical inquiry" in *Peterson* also

used rational basis review (i.e., *some* concealed carry may be prohibited;

**therefore, all** concealed carry may be prohibited). And, now, the district court has

similarly used rational basis review to extend that *Peterson* rationalization even

further (i.e., since all **concealed carry** may be prohibited then all carrying of

firearms in vehicles may be prohibited (even if sometimes clearly visible) because

"similarities between concealed carry and vehicular transportation [are] sufficient

in terms of regulatory effect, kind and purpose" Dk. 140, p 36). And that errant

use of rational basis review in determining "the scope" apparently resulted in

Appellants' arguments being given only cursory treatment (i.e. treated as if a

fundamental right was not implicated).

 If this Circuit Court finds that the Ordinance was neither preempted nor void

for vagueness (lack of proper notice) but does, in some cases, implicate the core of

the right to keep and bear arms, then the analysis would be far different than

anything undertaken by the district court. Plaintiffs had intended to address the

many errors and the alternative holdings in the uncertain event that this Court

decides to affirm on alternative grounds (as it unfortunately did in *Peterson*);

however, because of the limits set on briefing and the denial of Appellants' request

to exceed the that briefing limit, Appellants have been effectively forced to cut

some arguments completely out and to leave other arguments short on reasoning.

Wherefore, Appellants incorporate by reference their motion to exceed the

briefing limit and request that the Court order additional briefing.

# ARGUMENT

**I.** The district court committed reversible error by granting
   Defendant's motion for summary judgment [Dk. 108].

This issue was ruled on at Dk. 140, p. 43.

**A)** The district court erred by finding the City carried its burden to produce
   sufficient evidence in support of its objectives and; erred by making a
   determination about "the scope" of the right to keep and bear arms by use of
   a review exception (rational basis) which swallows the rule (review of scope
   subject to heightened scrutiny).

### IN THE RECORD

Concerning the City's burden, see Dk. 140, p. 40, "the court deems this
debate unnecessary". Concerning the scope determination, see Dk. 140,
p. 36, "The court finds the similarities" […] "there is no Second Amendment
right"

### STANDARD OF REVIEW

"We review challenges to the constitutionality of a statute de novo." *United
States v. Dorris*, 236 F.3d 582, 584 (10th Cir. 2000).

A *de novo* review owes no deference to the lower court.

### ANALYSIS

#### THE CITY'S BURDEN

If the City's Ordinance did implicate conduct within the scope of the Second

Amendment, then it was the burden of the City to show that the Ordinance did advance the objectives of the City, but the only evidence presented by the City addressed a nationwide area and did not pertain specifically to the City's jurisdictional area.

It was the burden of the City to show that carrying firearms in vehicles falls outside of "the scope" of the Second Amendment but no evidence was presented by the City to that end. The City's entire argument was comprised of the assertion that '[i]t is also worth considering whether a firearm carried in a vehicle is always considered a "concealed" firearm.' [Dk. 109, p. 13] and premised on 'If those firearms in those locations are "concealed" within the purview of the Tenth Circuit's conclusion [in Peterson]' [Dk. 109, p. 14].

Appellants raised that "concealed weapon prohibitions did not cover all types of firearms, such that having a rifle stowed (even loaded) while traveling was not considered to be concealment of a firearm under the law" See Dk. 118, p. 8; see also Dk. 154, p. 10 at ¶6.

## *THE EXCEPTION THAT SWALLOWED THE RULE*

At the heart of the issue is that the district court erred as a matter of law by applying rational basis review to its interpretation of "the scope" of the right to keep and bear arms rather than using a proper historical analysis to determine whether or not there were long standing prohibitions on the conduct of carrying

firearms in vehicles. *Heller* made clear that a rational basis "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms." An exception (i.e., use of rational basis review) which converts the historical inquiry into "the scope" into a review exercised under anything less than strict scrutiny analysis can effectively swallow the rule that heightened review applies to the Second Amendment.

Broad conclusions about what is outside of "the scope" are just as errant as broad conclusions about what is inside of "the scope". In other words, while courts routinely explain that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." neither was the right, as it concerned **concealed** carry, so limited that it allowed *prohibition* of all concealed carrying of every weapon whatsoever for every purpose. *Heller*'s statement that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." was specifically in the context of pointing to "some" limits on the right. The inclusion of an example of "some" restriction on concealed carry of "some" weapons was made to support that point, not to pronounce that "all" restrictions on "any sort" of concealed carrying would be found constitutional. In other words, though "some" prohibitions on carrying "some" concealed weapons at "some" times and places were held lawful, it does

not logically follow that "all" prohibitions on concealment of "any" weapon must therefore be lawful. Was stowing a rifle inside of a covered wagon unprotected conduct which fell outside of "the scope"? There are no court cases indicating it was. Was stowing a pistol in a saddle bag while travelling to town ever prohibited? There are no court cases indicating it was. The historical account of restrictions on concealed carrying illuminate that specific restrictions on that specific manner of carrying were generally limited to a certain few weapons and, more importantly, had exceptions for carrying concealed weapons **while traveling** on a journey. See, e.g., *Heller*, "it has been a subject of grave discussion, in some of the state courts, whether a statute prohibiting persons, **when not on a journey, or as travellers**, from *wearing or carrying concealed weapons*, be constitutional." (emphasis added); see also *State v. Mitchell*, 3 Blackf. 229 (Ind. 1833) ("except travellers"); see also *Smith v. State*, 42 Tex. 464 (1875) ("we are of the opinion that the facts stated show that the defendant was traveling within the meaning and spirit of the law.") Eliminating that well understood right to carry concealed for the purpose of travel by using a rationalization that because "some" was prohibited, then "all" is prohibited, is clear error, subjecting the Second Amendment to less than heightened review. The Ninth Circuit has recently taken just such an errant step though with a significant number of justices in the dissent. See *Peruta v. Cty.*

12

*of San Diego*, 824 F.3d 919 (9th Cir. 2016) (en banc).

While "some" restriction on concealment has historical support, the majority of courts does not constitute unanimous (see *Bliss*, supra). There was no majority support that such restrictions could extend to travellers. The *Heller* context was that of simply pointing to "some" restrictions on the right as a whole. The cite to *Nunn v. State*, 1 Kelly 243 (Ga. 1846) by *Heller*, in turn*,* made reference to *Bliss vs. The Commonwealth*, 2 Littell's Rep. 90, and noted that the restriction was limited to "wear a pocket-pistol, dirk, large knife, or sword in a cane, concealed as a weapon, **unless when traveling on a journey**". *Nunn* also referenced the case of *Mitchell* and noted that the restriction was limited to "Every person, **not being a traveler**, who shall wear or carry a dirk, pistol, sword in a cane, or other dangerous weapon, concealed, shall, upon conviction thereof, be fined in any sum not exceeding one hundred dollars."

Would courts have made the same holdings had the prohibitions not been on only certain weapons? Or if those laws lacked an exception for travel? In the present case, the City's regulation was nearly the opposite of the historical analogues – restricting <u>only</u> while traveling (transporting) – far afield of any historical analogue. In Dist. Colo. No. 1:10-cv-00059-WDM-MEH, Dk. 45 ("Order") in *Peterson* shows that both the State of Colorado and the City of Denver included a similar exception. See Order at p. 2, "for lawful protection of such person's or another's person or property **while traveling**." and at p. 5, "for lawful protection of such person's or another person's person or property, **while travelling**". These

exceptions are consistent with the longstanding historical understanding of the right to keep and bear arms as including "some" concealed carrying of arms. The weight of history, and even recent cases such as *Muscarello v. United States*, 524 U.S. 125 (1998), supports the proposition that the right to keep and bear arms protects the natural carrying of arms including the carrying of guns in one's car, or covered wagon, or other means of conveyance.

To disallow carrying arms in a vehicle can also infringe on the right to move your property from an old residence to your new home. Historical inquiry shows that firearms were not restricted while traveling, even those few certain weapons which were prohibited in some places. The *Nunn* court was wont to remark that:

> "We do not desire to be understood as maintaining, that in regulating the manner of bearing arms, the authority of the Legislature has no other limit than its own discretion. A statute which, under the pretence of regulating, amounts to a destruction of the right, or which **requires arms to be borne so as to render them wholly useless for the purpose of defence**, would be <u>clearly unconstitutional</u>."

The Ordinance required firearms be <u>unloaded</u> rendering them useless and, further, required them to be fully encased which only further ensured their uselessness. *Heller* held that self defense was the "central component" of the right to keep and bear arms. And *Heller* noted that in 'Nunn v. State, 1 Ga. 243, 251 (1846), the Georgia Supreme Court construed the Second Amendment as protecting the "natural right of self-defence". The logic which flows from that understanding is undeniable . . . if the Second Amendment protects the individual

14

natural <u>right of self-preservation</u> then any conduct of bearing arms <u>for self-preservation</u> -- falls within "the scope" of the Second Amendment. Perhaps such conduct can be regulated to some degree, but that is not the same as it being outside of "the scope". Allowing an analysis to jump the enormous gap from finding a "permissible regulation" to finding regulation is "outside of the scope" is to allow an **exception that swallows the rule**.

Despite the district court's own recognition that "the apparent policy interests behind the Ordinance do not squarely match up with those historically expressed for regulating concealed carry, *Peterson*, 707 F.3d at 1210-11" Dk. 140, p. 36, the district court's finding and conclusion was undeterred:

> "The court finds the <u>similarities</u> between concealed carry and vehicular transportation to be sufficient <u>in terms of regulatory effect, kind and purpose</u> as to justify applying *Peterson* here. Thus, the court concludes that the fair, logical and reasonable application of *Peterson* here means that there is <u>no Second Amendment right</u> for members of the public to transport loaded and non-encased firearms in their vehicles without a concealed carry permit." (emphasis added)

Dk. 140, p. 36.

A conclusion of "no Second Amendment right" means the conduct is outside of "the scope". If that same 'similarities' analysis (i.e., rational basis review) were applied to a house with the blinds closed on every window, the conclusion would invariably have to be that any firearm in such a house is "concealed" as that has the

same, or greater, similarity to the "regulatory effect, kind and purpose" so that a conclusion of "the fair, logical and reasonable application of *Peterson*" means that "the scope" of the Second Amendment right does not include protection for members of the public to carry loaded firearms in a home with the blinds closed. Hopefully, this Circuit Court will see how the use of rational basis review by the district court regarding "the scope" is error and that *Peterson* which also arrived at a historical scope conclusion through rationalization ( i.e., some not protected; therefore, none protected) is equally errant if *Peterson* was, in fact, intended as a broad holding (i.e., that no "concealed" carry is ever protected under any circumstances by the Constitution) and; if so intended, then that holding can give rise to results directly contradictory to the holding in *Heller*.

One logical extrapolation of the conclusion of the district court is that the Second Amendment does not protect the right to have a clearly visible rifle mounted in the back window of your pickup truck while traveling on the public roads which may lay upon your own property at your own home, something which will come as a shock to most farmers and ranchers as well as those who make their home in the rural countryside. A public easement taken for public travel does not strip all other property rights from the fee holders of the servient estate. See, e.g., Kan, A.G. op. 82-228 "the county acquires only an easement for road purposes, leaving the authority to grant additional easements vested in the owners of the land abutting the road, i.e. the fee holders of the servient estate."

16

That a public road transverses the property which you are using as your home does not mean you leave home and return home just by driving across the a portion of your own land for which you have not retained every property right. Those who have sold their mineral rights would be shocked to learn that the surface rights no longer constitute "home" because they failed to retain all property rights. If the City's Ordinance intended to make an exception for a brief area of the public roadway which passes upon one's own land at one's home it could have provided that as an exception, but it did not.

The district court seemed to recognize that "hidden" is a key component by referencing *Drake v. Filko*, 724 F.3d 426, 440 (3rd Cir. 2013), cert. denied, 134 S. Ct. 2134 (2014) See Dk. 140, pp. 33-34, yet, the district court stretched "hidden" to absurdity and; referring to *Masciandaro*, 648 F. Supp. 2d 779, 790 (E.D. Va. 2009) that "carrying a loaded weapon in a motor vehicle—an act which, by definition, is **almost always** outside the view of those nearby" (emphasis added) Dk. 140, p. 34 and; then stating that:

> '[t]he court agrees that firearms transported in vehicles will "almost always" not be open but hidden from the view of others outside of the vehicle.'

See Dk. 140, p. 34.

Such reliance upon "almost always" has never been used to criminalize any exercise of a fundamental right that Appellants are aware of. Even in a lesser

privilege context, if one <u>almost always</u> goes over the speed limit when driving, can

that person be found guilty of speeding for simply driving at a time when they are

not violating the speed limit? This "almost always" should not be used as a

reasonable suspicion determination, much less a probable cause determination, or

as implied here, a determination beyond  a reasonable doubt. That would turn

justice on its head even if it did not involve a fundamental right. What if an

Ordinance fairly represented the defendant's effort to regulate activity similar to or

in kind with "yelling Fire! in a crowded theater" by criminalizing all loud speech?

The question is not whether the Ordinance "regulate activity similar to or in kind"

to other activity that is not protected. The question is does the Ordinance regulate

**<u>any</u>** activity of a fundamental right that is protected by the Constitution? Analyzing

the fit for "historical inquiry" analogues under anything less than strict scrutiny,

causes the "analogue fit" exception to swallow the rule (the Rule which requires

heightened scrutiny – even strict scrutiny at times).  Would this Circuit Court give

even momentary credible thought to allowing rationalization of conclusions about

the "similarities" between  speech at issue and validly prohibited speech 'to be

sufficient in terms of regulatory effect, kind and purpose' (See Dk. 140, p. 36) to

justify finding the speech falls outside of  "the scope" of the First Amendment?

There certainly are very close 'similarities' between "fighting words" and

"loud speech". Would those similarities be sufficient as an analogue with history

18

such that the court can conclude that all "loud speech" falls outside of the scope of the First Amendment's protection? Yet, realistically, the Tenth Circuit's recent holding in *Peterson* that "the Second Amendment does not confer a right to carry concealed weapons" was not much different than the district court's own reasoning and holding – that is, use of a rational basis review to draw conclusions about the historical contours ("the scope") of Second Amendment.

The district court opined that "the apparent policy interests behind the Ordinance do not squarely match up with those historically expressed for regulating concealed carry, *Peterson*, 707 F.3d at 1210-11. Yet, the court is satisfied in that they share a common concern" (Dk. 140, p. 35) but sharing a common concern is nothing more than speaking to a rational basis. That is not historical inquiry.

Did *Peterson* mean that even fully visible firearms can be prohibited as concealed firearms so long as they are placed in or upon a vehicle? Is it unmanly, and is it seeking secret advantage, to have a visible rifle in the gun rack of the back window of your pickup truck? Would a man boarding a stage coach heading through hostile Indian country would have thought it unimaginable that the right to keep and bear arms provided him no protection to carry his loaded sidearm inside the coach in defense of himself and any ladies or other passengers aboard? There was clearly a historical right to carry concealed in a vehicle so long as it was carried for a "manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."

And that points to the core principle of crime and "intent" (i.e., *mens rea*).

If, in fact, one has an individual right to self preservation, then the mere circumstance of traveling in a vehicle (i.e. use of the most common mode of locomotion of the day) cannot strip that right away even if it necessitates "some" concealment -- prompting the key questions -- Does the right to keep and bear arms include protection of "some" concealment for the purpose of travel since "[c]onstitutional rights protect the necessary prerequisites for their exercise"? (See 578 U.S. ____ (2016) Luis v. United States, No. 14–419); see also Dk. 87, p. 19, see also Dk. 118, pp. 26-27. When traveling by automobile, does the right to keep and bear arms include inadvertent or necessary carrying out of plain sight? If conveyance of arms placed in or upon a vehicle does not fall within "the scope" of the Second Amendment, then does that hold even when the vehicle is one's personally owned home (e.g., RV) possibly even permanently used in the public sphere?

Even if the many historical (and current day) laws had not been tailored to only certain weapons and had not been tailored to allow for travel, the statement in *Heller* that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues," still remains solely an *ad populum* argument which fails to acknowledge the superior(earlier) historical position of *Bliss*. While an *ad populum* argument can be an indicator to help confirm a truth, it cannot legitimately be used as a determinative factor of truth especially where the

20

principle of *stare decisis* is being applied since *stare decisis* coaxes the accumulation of *popular* support for a wrongly decided case.

In *Peterson*, it was stated:

> 'In <u>Robertson v. Baldwin</u>, 165 U.S. 275 (1897), the Supreme Court stated in dicta that "the right of the people to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons." Id. at 281-82.'

But what laws were being spoken of in *Robertson*? Was it any and all laws that could ever be imagined? Or was it referring to the laws that had come to be on the books in that day? The dicta was clearly a reference to existing or past laws concerning concealment of some certain weapons. What the dicta of *Robertson* did not mention (as is the nature of dicta) is that many of those laws explicitly excluded the well understood exception for travel -- and that exception is found in many laws even in the present day. This fuller historical record leaves the broad holding (if it is to be understood as that) in *Peterson* with only a rational basis foundation (i.e., rationalizing that <u>because some </u>is unprotected, <u>then all</u> must be unprotected ).

The dissent from the eleven judge *en banc* decision in *U.S. v. Skoien*, Seventh Circuit No. 08-3770 (2010) stated that "[t]he better approach is to acknowledge the limits of the scope inquiry in a more straightforward way: The historical evidence is inconclusive at best." and; provided the important reminder that "Of course there are several ways to understand the Court's analysis in *Heller* in light of its limiting dicta about exceptions. But ***we cannot*** read *Heller's*

21

dicta in a way that **swallows its holdings.** The government normally has the

burden of justifying the application of laws that criminalize the exercise of

enumerated constitutional rights. We should follow that norm, not pay lip service

to it.")  (emphasis added)

When arms have been used to cause bodily harm, or property damage, or

even annoyance (when the annoyance is constitutionally proscribed), those uses

have not been protected. This understanding is not noticeably different than the use

of speech and those uses which are not protected. Neither right protects one "who

uses them for annoyance or destruction." *Commonwealth v. Blanding*, 20 Mass.

(3 Pick.) 304, 338 (1825). That early Massachusetts court, as with the Kentucky

court of *Bliss*, laid out in simple terms the limits on the Second Amendment –

regulation of *conduct* concerning *misuse* of arms. Likewise, as references in Heller:

> ' "[T]he right to keep arms involves, necessarily, *the right to use such
> arms for all the ordinary purposes, and in all the ordinary modes
> usual in the country, and to which arms are adapted*, **limited by the
> duties of a good citizen** in times of peace." Andrews, 50 Tenn., at
> 178'

The limits on the Second Amendment were laid out in simple terms -- "limited by

the duties of a good citizen". Good citizens do not lose their right to keep and bear

arms while travelling, they simply have a moral duty (personal responsibility) not

to allow them to be used to cause unjustified harm or annoyance. The U.S.

Supreme Court addressed the core concept of traveling with arms in *Dred Scott v.*

*Sanford*, 60 U.S. (19 How.) 393 15 L. Ed. 691 (1857) and serves as historical analysis near in time to the adoption of the Fourteenth Amendment and that court opined that the Second Amendment "would give them the full liberty […] to keep and carry arms **wherever they went**." (emphasis added) That finding certainly did not indicate that the right would dissipate in the least depending on the manner of travel from wherever and to wherever. The "wherever they went" was clearly not limited to traveling on foot (pedestrian) or horseback because wheeled vehicles clearly existed (i.e., stage coach, steam locomotive, etc).

When one is actively engage in self defense such as when under immediate threat of great bodily harm and death -- if conduct of that self defense entails hiding in an automobile from a malevolent pursuer including active intent to hide a firearm from the pursuer in order to effectively evade, is that concealment protected by the Second Amendment? Surely "a manly and noble defence" accounts for instances when concealed carrying is actually a part of making a noble defense of country (e.g., UDT [Underwater Demolition Team], Seal Team 6, etc). Appellants addressed a related rationalizaiton by the *Aymette* court (*Aymette v. State*, 21Tenn. 154 [1840]) in the ADDITIONAL HISTORICAL ANALYSIS section of Dk. 128-1 at pp. 10-11.

The "rational basis review" error seen in *Aymette* was that because to bear arms as **usually** (i.e., not always) employed in defense of the state necessarily requires that "some" arms be borne openly; therefore, the scope of the right does not reach to include any unusual employing of "some" arms in defense of the state such as

concealing a handgun under one's uniform. It cannot be credibly disputed that special operations forces of the United States carry concealed weapons.

If *Peterson* is intended to apply only to the specific facts of the case, it is a good and practical holding, at least in so far as there is no right to carry concealed in "any manner whatsoever and for whatever purpose"; therefore, there could be no constitutional right to a State license which would allow carrying concealed in "any manner whatsoever and for whatever purpose". LUCERO, J., concurring separately, noted that the judgment could have been given the same effect on other grounds -- meaning, overruling the broad holding would not really have any retrospective prejudice on Mr. Peterson.

Second Amendment jurisprudence is in its infancy and the opportunity for the court sitting en banc to correct "baby steps" early in life can prevent harsher corrections later. Because "some" concealed carry laws were "upheld, in part, on what is now the erroneous belief that the Second Amendment does not apply to the states" [*Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 95 (2d Cir. 2012)], giving historical weight to those cases is on shaky ground at best.

In *Peterson*, it was noted that '[d]issenting in *McDonald*, Justice Breyer further discussed the history of concealed carry regulations. See 130 S. Ct. at 3132 (Breyer, J., dissenting) (citing to an 1847 Virginia statute that barred the carrying of pistols "hidden from common observation");' Obviously, it is far from conclusive that this was not a rephrasing of sister States use of "concealed".

24

Further, it is unclear that use of the phrase "common observation" would apply to circumstance which do not, by necessity, allow for common observation. If a man walked behind a latrine curtain to relieve himself would he have then be considered as carrying a firearm "hidden from common observation"?

If a person had a firearm holstered on the left hip, would that firearm be considered "concealed" if anyone were located to the person's right side such that there was no direct line of sight to the firearm? (This is closely aligned with the errant reasoning used by district court) What if a person momentarily walked behind a large watering trough with his horse, would that Virginia statute apply? The original meaning is certain to provide no evidence that natural and necessary circumstances of ordinary lawful activity would provide reason for a charge of "hidden from common observation". What is clear, is the utter **historical lack** of cases wherein someone was prosecuted for "concealed carry" or for carrying "hidden from common observation" related to the natural and necessary circumstances of ordinary lawful activity. See argument noting "**other than** for the necessity of travel or inadvertent or necessary covering" [Dk. 87, p. 52].

If *Peterson* is truly intended to broadly strike all concealed carry from "the scope" of the right as expressed in *Heller*, then it contravenes *Heller*, in that a prudent exercise of self defense in the home would include hiding firearms to prevent any intruder from easily discovering the firearms. Such is certainly a prerequisite to the exercise of the right and the Supreme Court has made clear that

"constitutional rights necessarily protect the prerequisites for their exercise." *Luis v. United States*, 578 U.S. ___ 2016 (Thomas, J. concurring). This was also eloquently spoken to in a dissent of the Ohio Supreme Court when that court proffered essentially the same broad holding as *Peterson* but applied it strictly. (Of course, that 1920 case was pre-*Heller* so that Ohio court had no real U.S. Supreme Court cases on point.) See *State v. Nieto*, 101 Ohio 409, 130 N.E. 663 (1920)(WANAMAKER, J., dissenting):

> I hold that the laws of the state of Ohio should be so applied and so interpreted as to favor the law-abiding rather than the law-violating people. If this decision shall stand as the law of Ohio, a very large percentage of the good people of Ohio today are criminals, because they are daily committing criminal acts by having these weapons in their own homes for their own defense. The only safe course for them to pursue, instead of having the weapon concealed on or about their person or under their pillow at night, is to hang the revolver on the wall and to put below it a large placard with these words inscribed:
>
> "The Ohio Supreme Court having decided that it is a crime to carry a concealed weapon on one's person in one's home, even in one's bed or bunk, this weapon is hung upon the wall that you may see it, and before you commit any burglary or assault please, Mr. Burglar, hand me my gun."

That common sense "Mr. Burglar" sign devised by the dissent based on a strict broad reading that all concealed weapons may always be prohibited, hopefully demonstrates that any strict and broad reading of *Peterson* is not within the meaning of common sense.

In conclusion, the evidence presented by the City was insufficient and;

the district court erred in its understanding or reliance on *Peterson* and this Circuit

Court should not be reticent to clarify that *Peterson*. The district court employed an

exception(rational basis) which swallowed the rule (heightened scrutiny analysis).

**B)** The district court erred in its finding of lack of standing

for Plaintiff Eric Clark.

***IN THE RECORD***

See Dk. 140, p. 14, "plaintiff Eric cannot satisfy the injury-in-fact requirement for

standing".

***STANDARD OF REVIEW***

"We review issues of standing *de novo*, accepting as true all material allegations

of the complaint, and . . . construing the complaint in favor of the complaining

party." *Winsness*, 433 F.3d at 732 (quotations and brackets omitted) (ellipsis in

original).

"The standard -encapsulated in the phrase 'credible threat of prosecution'-is

quite forgiving." *New Hampshire Right to Life Political Action Comm. v. Gardner*,

99 F.3d 8, 14 (1st Cir. 1996); see *also Babitt v. United Farm Workers Nat'l Union*,

442 U.S. 289, 298 (1979).

***ANALYSIS***

Did a finding lack of standing for Plaintiff Eric Clark adhere to the

proper standard of review at the summary judgment stage of litigation?

The district court indicated that it "finds that as a matter of law the plaintiff Eric

cannot satisfy the injury-in-fact requirement for standing on His Second

Amendment claim for compensatory damages".[Dk. 140, p. 14] Appellants assert

that was an error of law.

The district court relied on an errant assessment of the *point-in-time* that the

injury-in-fact occurred. See Dk. 140, p. 12, "Eric does not point to any cognizable

injury or costs associated with having traveled on these occasions in compliance

with the ordinance." This fails to account for the prior restraint injury (refrain from

carrying) which occurred even <u>prior to</u> initiating travel. That there is no <u>additional</u>

injury <u>during</u> travels does not negate the injury-in-fact which occurred. This

apparently lead to the logical (but errant) conclusion that

> "As for the two times when he did travel with a firearm in violation of
> the ordinance, Eric has not come forward with specific **facts showing
> a genuine issue for trial that he faced a credible threat of this
> ordinance being enforced against him**." (emphasis added)

See Dk. 140, pp. 11-12.

Even presuming, *arguendo*, that this was the actual <u>point-in-time</u> at which the

injury-in-fact would have occurred, the district court had acknowledged that

"an actual arrest, prosecution, or other enforcement action is not a prerequisite"

See Dk. 140, p. 12.

Elsewhere, the district court appeared to recognized the correct <u>point-in-time</u>

by stating that:

> "Eric expands his allegations of a chilling impact by arguing that he
> even felt compelled to not carry a loaded firearm from his house
> across his curtilage before climbing into his vehicle and driving away.
> See affidavit at Dk. 118-1, pp. 3-6."

See Dk. 140, p. 7.

In Plaintiffs' response to Defendant's motion for summary judgment [Dk.

120], Plaintiffs incorporated "their prior filings of Dk. 8 (opposition to motion to

dismiss), Dk. 45 (second amended complaint), Dk. 86,87 (motion for partial

summary judgment and brief in support), and Dk. 118,118-1 (Reply to Defendant's

Response to partial summary judgment) to include the entirety of the filing

**including all arguments and exhibits.**" (emphasis added) See Dk. 120, p. 5. And

Dk. 87 further incorporated exhibits of Dk. 13-1 (affidavits).

Dk. 87, p. 10 at ¶5 stated:

> "Plaintiff Eric Clark was prevented from exercising his Second
> Amendment right between December 2, 2013 and August 24, 2014
> because of the City's 9.13.040 regulation and its chilling effect by the
> City's contemporaneous enforcement of the regulation against
> plaintiff Jonathan Clark. See Doc. #13-1 page 3 at "2." and; Doc. #13-
> 1 page 4 at "3."  See also instanter Exhibit B at Admission Nos. 7, 8,
> 9, 11, 12, 13, 14."

That paragraph alleged the injury-in-fact and the proximate cause (fairly traceable)

and were supported by incorporating the fact affidavit of Dk. 13-1, pp. 3-4, and

admissions to facts by the City at Dk. 13-1, pp. 26-28. (See also allegations in

Second Amended Complaint [Dk. 45] art paragraphs 27 and 42.) The fact affidavit

29

at Dk. 13-1, pp. 3-4 contained:

> "On one or more occasions between December 2, 2013 and August
> 24, 2014, I refrained from transporting lawful loaded firearms into the
> City of Shawnee, Kansas because that conduct was prohibited by
> Ordinance 9.13.040 of the City of Shawnee, Kansas and because I
> feared detention, arrest, prosecution, incarceration, and fines were I to
> violate Ordinance 9.13.040 of the City of Shawnee, Kansas."

and contained,

> "But for the Ordinance 9.13.040 of the City of Shawnee, Kansas, I
> would have exercised my Second Amendment right on one or more
> occasions for which I refrained between December 2, 2013 and
> August 24, 2014."

A fact admitted by the City at Dk. 13-1, p. 27 was that "On December 2,2013,

Officer Karlin did arrest Jonathan Clark because of violating 9.13.040 concerning

firearms.   ANSWER: Admitted."

The only remaining prong for standing is redress-ability which was clearly

shown by the Second Amended Complaint in that the court could provide:

> "RELIEF
> WHEREFORE, Plaintiff seeks relief against Defendants as follows:
> 1.     Award relief to Plaintiffs against Defendants, as their liabilities
> may appear, in compensatory damages " See Dk. 45 at p. 12."

The allegations and supporting facts as noted above are sufficient to establish

standing as a matter of law. A prior restraint requires a "credible threat"

determination but that is very much like a "plausible claim" determination.

It is not a high bar and does not require more probable than not.

The district court correctly noted that:

> the Supreme Court has said there must be, "circumstances that render the threatened enforcement sufficiently imminent," and the plaintiff must demonstrate, (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute," and (2) "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 134 S.Ct. at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). A credible threat of prosecution cannot rest on fears that are "'imaginary or speculative.'" *United Farm Workers*, 442 U.S. at 298 (internal quotation marks and citation omitted).

See Dk. 140, pp. 11-12.

What the district court failed to note in the same cited cases were the factual allegations which lead to those decision. A fuller look at *Susan B. Anthony List* , 573 U. S. _____ (2014) reveals that the facts consisted of a complaint filed against one petitioner(SBA) who then pursued suit to challenge the law. The other petitioner, Coalition Opposed to Additional Spending and Taxes (COAST), then filed suit challenging the same law by alleging that it had **planned to engage** in the same activity **but refrained due to** the proceedings against SBA. The facts of the instant case are that a complaint for violation of the regulation was filed against one plaintiff and the other plaintiff, who planned to engage in the same activity, refrained due to the proceedings against the other plaintiff. There can be no closer fact matching – and a unanimous Supreme Court held that "Petitioners have alleged a sufficiently imminent injury for Article III  purposes. Pp. 7–18."

31

(emphasis added) and that "Petitioners have alleged a credible threat of

enforcement" (emphasis added) Id. at Syl.

After citing to the above as support, the district court erred in its conclusion that:

> "The plaintiff Eric's alleged fear and anxiety here over the ordinance's possible enforcement against him when he visited the City are **too speculative** to satisfy the injury-in-fact prong of the standing requirement. There is nothing about Eric's travels in the City or about his communications with the City that would suggest he ever received a warning or threat or ever faced a credible threat of arrest or prosecution." (emphasis added)

See Order at page 13.

Most salient to this is that there need not be anything about "Eric's travels in the

City or about his communications with the City that would suggest he ever

received a warning or threat" in order for there to be a credible threat of

prosecution. In the context of standing, "too speculative" means something even

less than "remotely possible". There certainly is no requirement to receive a

personal "warning or threat" from the City beyond the existence of its regulation

(unless the City has unequivocally disavowed enforcement of the regulation).

In this context, "credible threat" does not necessarily mean probable or even likely,

so that even "remotely possible" will meet the low bar of standing. Those falling

somewhere below "remotely possible" have been described as "persons having no

fears of state prosecution except those that are imaginary or speculative" *Younger*

*v. Harris*, 401 U. S. 37, 401 U. S. 42 (1971). The bar for standing is a very low

one with good cause since dismissing a plaintiff can wrongly preclude a

meritorious claim. In looking to *Younger v. Harris*, the exception to standing of

enforcement being imaginary or **speculative can be overcome** by showing that an

enforcement is **remotely possible**. Plaintiff Eric clearly showed that enforcement

is remotely possible by including facts of a contemporaneous arrest of Plaintiff

Jonathan, Eric's nephew, for the same regulation prompting the threat. The

"imaginary or speculative" description in *Younger* was referenced by stating:

> 'Since the New York statute prohibits only anonymous handbills
> directly pertaining to election campaigns, and it was wholly
> conjectural that another occasion might arise when appellee would be
> prosecuted for distributing the handbills referred to in the complaint
> because his sole concern related to a Congressman who would not
> likely be a candidate again, the controversy here lacked "sufficient
> immediacy and reality" to warrant issuance of a declaratory
> judgment.'

Id. at Syl. 2.

> 'His assertion in his brief that the former Congressman can be "a
> candidate for Congress again" is hardly a substitute for evidence that
> this is a prospect of "immediacy and reality."'

Id. at 109.

From a closer look it can be seen that [ can be again . . . but <u>is not currently</u> ] is at

the heart of the characterization as **speculative**. If Eric had sought **prospective**

relief for a point-in-time **after** the ordinance had been repealed, then it could fit

that category, i.e., the regulation "can be" enacted again but currently is not

enforced. However, the **retrospective** relief sought, and for which standing

applies, is for a <u>point-in-time</u>  when the regulation was being actively enforced.

Further, *Younger* was addressing merit of the "issuance of a declaratory judgment"

which sits at least one wrung above what is needed for standing.

The district court erred in concluding that "Eric's alleged injuries are merely

conjectural and hypothetical and will not satisfy the injury-in-fact requirement."

because without some conjecture (or some hypothetical) then no claims for any

prior restraints could ever be brought by anyone under any constitutional right.

A prior restraint must be accepted, pre-trial, as a valid legal theory. This is borne

out in *Peterson*, in a footnote on page 21, where the court stated:

> 'For purposes of standing, the question cannot be whether the
> Constitution, properly interpreted, extends protection to the plaintiff's
> asserted right or interest. If that were the test, every losing claim
> would be dismissed for want of standing." <u>Initiative & Referendum</u>
> <u>Inst. v. Walker</u>, 450 F.3d 1082, 1092 (10th Cir. 2006). Because "**we**
> **must assume the Plaintiffs' claim has legal validity,**" <u>id.</u> at 1093,
> we conclude that Peterson has standing.'

The district court did note that "[t]The City summarily denies that Eric sustained

an injury in fact because the ordinance was never enforced against him." [Dk. 140,

p. 10] but a summary denial, even if accepted as a genuine dispute, does no more

than create a dispute which would preclude summary judgment (even though

summary denials without any factual allegation in support are generally not

considered genuine disputes ).

At page 11 of the Order [Dk. 140], the district court states:

> "the court understands Eric to base his standing on having
> experienced what he alleges to be a credible imminent threat created
> by a combination of circumstances. First, the City had the authority to
> enforce this Ordinance against anyone traveling within its City limits.
> Second, Eric occasionally traveled in the City of Shawnee. Finally,
> upon learning of the firearm charges against his nephew, Eric felt
> restrained from exercising his Second Amendment rights to carry a
> loaded and non-encased firearm in his vehicle."

That is an essentially an accurate summary although Plaintiff Eric's use of

"credible imminent threat" rather than simply "credible threat" may have confused

the issue. See the district court analysis stating "Eric does not have the facts to

support a sufficient imminent threat here." [Dk. 140, p. 11]

The district court seemed to require that the credible threat be greater for

Eric than others to reach above being speculative by stating:

> "Other than learning about the ordinance from his nephew's charges,
> Eric grounds his standing and seeks damages on having experienced
> the same general enforcement threat that faced anyone in the City of
> Shawnee transporting a firearm in a vehicle."

See Dk.140, p.11.

Facing a greater threat than anyone else in the City faces is not the proper inquiry.

Would the City have enforced their Ordinance had they observed Plaintiff

Eric violate it thereby making enforcement at least a remote possibility?

There is no evidence in the record to answer this any other way than in the

affirmative. And that is sufficient to constitute a credible threat for standing

35

purposes.

The district court erred as a matter of law by concluding that self censorship

is not applicable for determination of standing for Second Amendment injuries;

(See Dk. 140, p. 13, "This is not a First Amendment case in which standing may

arise from forced self-censorship.")  But such a conclusion would preclude

any prior restraint from ever being a valid legal basis for any Second Amendment

claim ever. The same conclusion could have been made about First Amendment

claims just a hundred years ago. Would that have been a valid conclusion?

No, because that is putting the horse behind the cart. Would the first case

concerning prior restraint on the First Amendment have failed to reach the low bar

for a determination of standing simply because prior restraint had never before

provided standing under the First Amendment? The court in *Davis v. Grimes*, 9 F.

Supp. 3d 12 (D. Mass. 2014) properly applied the test for standing by applying this

combination of circumstances. That is, the circumstances that "[w]hile defendants

have not threatened to penalize plaintiffs, they also **have not unequivocally stated**

**that they will not enforce the licensing restrictions**." which was therefore **not**

"too speculative" and thus properly concluded the existence of a credible threat

of enforcement for standing (See "Plaintiffs choose not to carry a firearm for self-

protection because of a credible threat of penalty, and therefore have established an

actual injury-in-fact.") *Davis v. Grimes*, 9 F. Supp. 3d 12 (D. Mass. 2014).

An "injury-in-fact" "is defined as 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) (quoting Lujan, 504 U.S. at 560).  An <u>actual</u>  <u>refrain from carrying</u> <u>a firearm</u> is both concrete and actual. Though a recent case in this Circuit was dismissed on appeal concerning the same combination of "credible threat" and "prior restraint", it was dismissed only because that lack of standing came from **lack of allegation** that the parties would specifically **engage in** the activity.  See *Kerr v. Hickenlooper*,  10th Cir. No. 12-1445 filed June 3, 2016, noting '[t]he alleged injury "scarcely zeroe[s] in on any individual [m]ember." And that "[n]one of the plaintiffs, therefore, c[an] tenably claim a personal stake in the suit." That case was remand to the district court and a subsequent Amended Complaint Fourth was filed on 12/6/2016 (See Dk. 151 of D. Colo. No. 1:11-cv-01350-RM-NYM) which that Court has not yet addressed as to whether or not the amendment complaint cured the lack of allegations. There is no such lack of allegation in the instant case concerning Plaintiff  Eric Clark. See Dk. 120, p. 4 at ¶¶1-2; see also Dk. 45, p. 6 at ¶27; see also Dk. 13-1, p. 3 at ¶2; see also Dk. 13-1, p. 4 at ¶3.

The <u>determination of standing</u> would be relaxed even further for the First Amendment such that ***even if*** an **unequivocal** statement was made that

enforcement will **not** be ***presently*** taken, standing would still exist. See *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir. 1987) (holding that when a state statute "chills the exercise of First Amendment rights, standing exists even though the official charged with enforcement responsibilities has not taken any enforcement action against the plaintiffs and **does not presently intend to take any such action**").

In conclusion, this Court should find that, for a summary judgment motion where factual allegations are to be taken as true and the legal basis is presumed valid, there was no lack of standing for Plaintiff Eric Clark.

**C)** The district court erred by finding that the City's Ordinance was not preempted by State law based on an improper interpretation of State law.

***IN THE RECORD***

See Dk. 140, p. 16, "defendant is entitled to summary judgment on this claim".

***STANDARD OF REVIEW***

Interpretation of State law is a question of law and subject to *de novo* review. "The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are *bound to take judicial notice*, without plea or proof." *Lamar v. Micou*, 114 U.S. 218, 223

(1885) (emphasis added).

Kansas has identified preemption statutes as a matter of law. See

*Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*,

292 Kan. 285, 294, 255 P.3d 1186 (2011) ("Preemption is a question of law

over which this court exercises de novo review.").

"A city ordinance should be permitted to stand <u>unless</u> an actual conflict

exists between the ordinance and a statute, or unless the legislature has clearly

<u>preempted</u> the field so as to preclude municipal action. See *Claflin v. Walsh*,

212 Kan. at 7; *City of Junction City v. Lee*, 216 Kan. 495, 501, 532 P.2d 1292

(1975)." *Moore v. City of Lawrence*, 232 Kan. 353 (1982).

### *ANALYSIS*

Appellants hereby incorporate by reference their motion to certify a question

of State law and supporting brief filed contemporaneously with this brief as that

motion addressed the issue of pre-emption and interpretation of State law.

The district court erred as a matter of law by failing to apply the State's

general preemption of regulation in a way which retains its supremacy over

specific exemptions which present conflicts.

The aim of the decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64

(1938) was to require that federal courts ascertain the meaning of State law in the

same manner as would the courts of that State. To ascertain State law in another

manner would be clearly erroneous. *See, eg., Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir. 1980) (construing New Mexico law as would the New Mexico Supreme Court).  An abuse of discretion exists where the district court's decision is predicated on an erroneous conclusion of law.

Kansas Attorney General opinion 2011-024 explicitly noted that there was a necessary reason to consider whether the exemption conflicted because of the language contained in the general preemption and the language contained in the specific exception pose a potential conflict if the specific exception language of "transport" is interpreted as encompassing the general preemption language of "carry".

When a legislature uses different terms within the same statute it is to be presumed that those terms have different meanings unless the context makes clear that the refer to the same exact thing. The common sense understanding of the whole (i.e., *in pari materia*) is that use of **carry** refers to <u>one specific form</u> of transport leaving the word **transport** to refer to <u>all other forms</u>. Had the legislature intended "transporting" to encompass "carrying" it would be superfluous to include both in the list of general preemption prohibitions. See current K.S.A. 12-16,124(a): "No city or county shall […] sale, purchase, transfer, ownership, storage, **carrying, transporting** or taxation of firearms[…]".

40

In *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the U.S. Supreme Court concluded that 'there is no evidence to indicate that Congress intended to expand the meaning of "use" so far as to swallow up any significance for "carry."' In the State statute at issue in this case, there is likewise no evidence to indicate that the legislature intended to expand the meaning of "transporting" so far as to swallow up any significance for "carrying".

That conflict noted by the Attorney General in the K.S.A. 12-16,124 statute can easily be resolved through excluding <u>the one form</u> of transport(i.e., carry) from <u>all other forms</u> of transport.

**D)** The district court erred on the issue of when facial challenges may be made to a criminal Ordinance which implicates constitutional provisions including an enumerated fundamental right (as opposed to statutory provisions) and; the district court erred by not identifying and using the proper review standards for each of the various challenges and; the district court erred by misapprehending the Due Process challenge and dismissing it as duplicative and; the district court erred by failing to perform a facial equal protection analysis of the Ordinance, thus failing to address when one's home is an RV and; the district court erred in its equal protection analysis for "similarly situated" persons, thus failing to address a difference in treatment of similarly situated persons based solely upon the person stating one certain

personal desire.

## IN THE RECORD

See Dk. 140, p. 18, "ruling against all facial challenges"; p. 35, "reject a facial

challenge"; p. 37, "Intermediate scrutiny is appropriate here, because it does not

burden the core Second Amendment right"; p. 21, "court rejects this claim (sic) an

effort to raise a duplicative claim under substantive due process grounds"; p. 20,

"the plaintiff has not alleged and shown discriminatory treatment of persons

similarly situated"

## STANDARD OF REVIEW

The proper standards for constitutional analysis present a question of law subject to

*de novo* review.

## ANALYSIS

To begin, see the entirety of Appellants' Dk. 87, pp. 46-47, most notably the

Supreme Court stating in *Johnson v. United States*, 135 S. Ct. 2551 (2015) that a

"supposed requirement of vagueness in **all applications** is **not a requirement at**

**all**..." Id. at 2561 (emphasis added).

Next, the district court opined at Dk. 140, p. 22, that:

> 'Facial challenges are strong medicine." *Ward v. Utah*, 398 F.3d
> 1239, 1246 (10th Cir. 2005). Consequently, they "'are disfavored,' . . .
> , and generally fail if any 'set of circumstances exists under which the
> [law] would be valid.'" *Peterson v. LaCabe*, 783 F. Supp. 3d at 1173
> (quoting *Washington State Grange v. Washington State Republican
> Party*, 552 U.S. 442, 449-450 (2008)). "Facial overbreadth challenges
> are disfavored and permitted 'in relatively few settings, and,

> generally, on the strength of specific reasons weighty enough to
> overcome [courts'] well-founded reticence.' *United States v. Decastro,*
> 682 F.3d 160, 169 (2d Cir. 2012) *(*quoting *Sabri v. United States,* 541
> U.S. 600, 609–10 (2004)), *cert. denied*, 133 S. Ct. 838 (2013).
> The plaintiff's facial challenges fail to meet the above thresholds.'

First, the modern embrace of dicta concerning facial challenges being <u>disfavored</u>

cited by the district court appears to spring from an improper wholesale approach,

treating enumerated fundamental rights(or other provision <u>of the constitution</u>)

as being no different than a statutory provision. Next, one concern in that

"disfavored" dicta was about inviting judgments on fact-poor records but the facts

for a summary judgment as a matter of law where the government has the burden

of showing constitutionality, basis for such concern would be generally be absent.

Last, and most importantly, the dicta concerning facial challenges being disfavored

cited by the district court as a quote from *Sabri* was <u>plainly and explicitly</u>

<u>overruled</u> by the Supreme Court in *Los Angeles v. Patel*, 576 U.S. ___ (2015):

> II
> We first clarify that facial challenges under the Fourth
> Amendment [enforceable provision of the Constitution.]
> are not categorically barred or especially disfavored.
> A
> A facial challenge is an attack on a statute itself as opposed to a
> particular application. While such challenges are "the most
> difficult . . . to mount successfully," *United States v. Salerno,*
> 481 U. S. 739, 745 (1987), the Court has have never held that
> these claims cannot be brought under any otherwise enforceable
> provision of the Constitution.

Clearly, the Supreme Court distinguishes between a 'provision of the Constitution'

and other Acts by Congress (i.e., statutes). Appellants challenges including vagueness, equal protection, and due process are challenges are brought under enforceable "provision of the Constitution". Further, in *Aptheker v. Secretary of State*, 378 U.S. 500 (1964), the Supreme Court, even while citing to a First Amendment case for applying an over breadth challenge, noted that the First Amendment is not unique to an over breadth challenge, reasoning that '[s]ince this case involves ***a personal liberty protected by the Bill of Rights***, we believe that the proper approach to legislation curtailing that liberty must be that adopted by this Court in *NAACP v. Button*, 371 U. S. 415, and *Thornhill v. Alabama*, 310 U. S. 88. In *NAACP v. Button*, the Court stated that "[i]n appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar",' Id. at 516. with "possible applications of the statute in other factual contexts besides that at bar" obviously meaning overbreadth (discrete groups who are not current litigants [at bar]). And the *Thornhill* reference obviously equating to a finding that

> "[t]he very existence of a penal statute such as that here, which does not aim specifically at evils within the allowable area of state control, but sweeps within its ambit other activities that, in ordinary circumstances, constitute an exercise of [***a personal liberty protected by the Bill of Rights***], results in a continuous and pervasive restraint of [that protected activity]."

Id. Syl. at 3(b).

And that

> "[the injured party] under such a statute does not have to sustain the
> burden of showing that the State could not constitutionally have
> written a different and specific statute covering the particular
> activities in which he is shown to have been engaged."

Id.

What was *Heller* if not a decision finding that a certain prohibition would be

a deterrent to the exercise of a personal liberty protected by the Bill of Rights?

The district court opined that:

> "the plaintiff has not alleged standing to bring an equal protection
> claim alleging the rights of non-residents. If this is intended to be a
> facial challenge, then the court's later ruling against all facial
> challenges also will apply here."

See Dk. 140, p. 18.

In wholesale rejecting all facial challenges, the district court implied that a

challenge to equal protection would be limited to only those discrete groups for

which the litigant was a member – in other words, an as-applied challenge.

In so far as the district court placed reliance upon *Skoien*, or *Skoien*'s reliance on

*Salerno*, for that limitation, it was error – see *Patel*, supra, explicitly overruling.

The district court also misapprehended the Due Process challenge by

viewing that at "duplicative Second Amendment challenge." (Dk. 140, p. 21).

The Equal Protection challenge regarded differing treatment in regard to the

Second Amendment rights but the Due Process challenge was the flip side

implicating <u>other</u> fundamental rights  – in that, if, in fact, there is no differing

treatment of the Second Amendment under the Ordinance because people who are

otherwise similarly situated are also <u>required</u> to state a certain personal desire

under penalty of perjury, then Due Process is separately implicated concerning

different fundamental rights by that <u>requirement</u> since such a requirement would

subject some people to potential criminal liability. The entirety of the Due Process

challenge was laid out in the section of Dk. 87 beginning at page 44 and

Appellants incorporate that argument by reference. Even if, *arguendo*, the district

court properly decided that this due process challenge should be analyzed under

the Second Amendment rather than substantive due process of the Fifth

Amendment, then the district court still erred by failing to weigh this burden at all

in any Second Amendment analysis. How heavy of a burden is it to require

someone to commit a felony in order to exercise an enumerated fundamental right?

The district court apparently concluded that such a burden need not be weighed

since it would only apply to some people under some circumstances and thus could

be disregarded because of failing to meet the "no set of circumstance" threshold –

which has herein been shown to be improperly applied in the "fundamental right"

context.

Even presuming, *arguendo*, that there was no Due Process violation based

on such a <u>requirement</u> to subject oneself to criminal liability, even then, under

proper Equal Protection analyses, even if that heavy burden (criminal liability) is only required for one discrete set of persons, it would fail constitutionality for there is no level of justification under any level of scrutiny that the government could devise to justify requiring someone to commit a felony in order to exercise a fundamental right.

The reality is that such a requirement does implicate Due Process, and that is not to be analyzed under the Second Amendment because the rights implicated is really the core of the right of liberty – liberty to act lawfully (i.e., right to refrain from committing a felony through perjury – which, at the very least, implicates the Fifth Amendment right against self incrimination.

There is no clearer subject matter for a Due Process challenge than when the government denies a citizen "life, liberty or property" most certainly when that liberty implicates freedom of speech or right against self incrimination. The government requiring an unlawful act in order to obtain the liberty to exercise a fundamental right is oxymoronic at best, for if you have to gain the liberty to exercise the right, then was it really "right" to begin with?

The district court also indicated a reason for rejecting the facial challenges by stating "[a]s shown later, the court will conclude that the Ordinance had been applied properly and constitutionally to the plaintiff. Thus, the court rejects the plaintiff's facial challenges as argued in all aspects." Dk. 140, p. 24. This makes

47

clear that the analysis of the district court is based on the conclusion that the

Ordinance does not implicate any conduct that falls within the Scope of the Second

Amendment (i.e., "there is no Second Amendment right for members of the public

to transport loaded and non-encased firearms in their vehicles without a concealed

carry permit.", Dk. 140, p. 36) with the implied reasoning being that because no

fundamental right is at stake, the analyses of Equal Protection and Due Process

would necessarily fail and, even if not, would not meet the *Salerno* threshold of

"no set of circumstances". A threshold which has been misinterpreted and is error

based on *Johnson v. United States*, 135 S. Ct. 2551 (2015).

The mixture of an errant finding that the Ordinance does not implicate

conduct within the scope of the Second Amendment along with failing to

distinguish the Equal Protection and Due Process challenges as distinct facial

challenges from a facial Second Amendment challenge leave multiple errors in the

wake. Presuming, *arguendo*, that no fundamental right was implicated by the

Ordinance, an Equal Protection analysis of the Ordinance would still certainly fail

as the Ordinance would be unable to pass constitutional muster even under rational

basis scrutiny because of treating individuals different based solely upon a personal

desire and; if that challenge is avoided/overcome by requiring "people without that

personal desire" to commit a felony in order to be treated equally by the

Ordinance, them that raises a Due Process challenge which it must fail on the

flip side.

Lastly, the district court holding that there is "no Second Amendment right

for members of the public to transport loaded and non-encased firearms in their

vehicles **without a concealed carry permit**" is a faulty framing for "the scope" of

an enumerated fundamental constitutional right because, **regardless of a permit**,

the right either exists or it does not exist. That is, the contours of a pre-existing

fundamental right do not magically expand or contract based on the issuance of a

State license. Either "there is no Second Amendment right for members of the

public to transport loaded and non-encased firearms in their vehicles", **period**, or

the right exists but the government may infringe upon it. To claim otherwise would

present an unsolvable conundrum of logic. And it the rights exists and is simply

being infringed on by requiring a permit, then the factual allegation in Plaintiffs

complaint [Dk. 45, at ¶ 18b] which make the "strong showing" of being similarly

situated was overlooked by the district court.

In conclusion, a proper application of the standard concerning facial

challenges to enumerated fundamental rights would necessitate the district court to

properly consider the several facial challenges raised in the court including due

process and equal protection (e.g., Dk, 87, pp. 39-46; Dk. 120-1, pp. 7-11;

Dk. 128-1, pp. 6-7; etc.) Briefly, under equal protection, for that discrete set of

people for whom their vehicle *is* their home on the public streets of the City, the

City's ordinance directly contravenes the finding in *Heller* of the right to have a

firearm operable for the purpose of immediate self defense at one's home.

To get from there to the district court holding that there is no right to have a

firearm in the home for that discrete set of people – shocks the conscience.

**E)** The district court **either** erred by finding that the Ordinance did not

implicate the core of the Second Amendment right (i.e., firearm operable for

immediate self defense at hearth and home) and thus subject to strict

scrutiny rather than intermediate scrutiny **or**; the district court erred by

failing to find that the criminal Ordinance was void for vagueness.

***IN THE RECORD***

See Dk. 140, p. 22, "None of these arguments makes out a viable facial challenge";

p. 37, "it does not burden the core Second Amendment right".

***STANDARD OF REVIEW***

An Ordinance is unconstitutionally vague if it fails to provide the kind of

notice that will enable citizens to conform their behavior to the law. "No one may

be required at peril of life, liberty or property to speculate as the meaning of penal

statutes." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999) (emphasis added).

The Fourteenth Amendment requires a state to provide citizens fair warning of the

conduct that might subject them to criminal sanctions. See *Giaccio v.*

*Pennsylvania*, 382 U.S. 399, 402-03 (1966).

## ANALYSIS

As noted concerning State law preemption, the aim of the decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) was to require that federal courts ascertain the meaning of State law in the same manner as would the courts of that State. To ascertain State law in another manner would be clearly erroneous. *See, eg., Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir. 1980).

The longstanding holding by the State of Kansas concerning interpretation of statutes, such as the City's 9.13.040 regulation ("Ordinance") is that 'the determinative question in such cases is "whether a person of ordinary intelligence understands what conduct is prohibited by" the statutory language at issue.' See Kan. S.Ct. No. 100,445. And the U.S. Supreme Court has similarly stated that fair notice of what activity would be prohibited amount to a taking of liberty concerning all activity which lays within the fair notice. See *Johnson v. United States*, 135 S.Ct. 2551 (2015) that:

> Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. *Kolender* v. *Lawson*, 461 U. S. 352, 357–358 (1983). The prohibition of vagueness in criminal statutes "is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law," and a statute that flouts it "violates the first essential of due process." *Connally* v. *General Constr. Co.*, 269 U. S. 385, 391 (1926).

51

( See also *Connally v. General Const. Co.*, 269 U.S. 385 (1926) , "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application")

The fair notice of the City's regulation, during timeframe, at minimum, from the December 2, 2013 to June 30, 2014, the Ordinance was reasonably understood by Plaintiff Eric Clark that it would be prohibited him to exercise his usual manner of self defense (carrying a loaded firearm in his vehicle when visiting his nephew in Shawnee, Kansas) without being subject to criminal sanctions, causing him to conform his behavior  to the Ordinance by ceasing to carry a firearm operable for immediate self defense at his home during part (from cartilage to automobile to public street) of his travel to the City because that was his best alternate manner of self defense while travelling to Shawnee. (See Affidavit at Dk. 118-1, pp. 3-6) The Ordinance would have the same effect (prohibit carrying a loaded firearm in a vehicle at home) would be true of those who live within the City limits and would otherwise carry a loaded firearm for self defense in their vehicle. (See Dk. 188, p. 32).  If the Ordinance does not cover all of the conduct that a person of ordinary intelligence would understand to be prohibited, then the ) Ordinance  would be unconstitutionally vague. The present Ordinance should be found as not being vague but clearly should be found to implicate the core of the Second Amendment since a person of ordinary intelligence would understand that

52

the Ordinance requires unloading a firearm **before** entering upon the public road

(even entry by the fee holder of the servient estate). The district court properly

recognized this vagueness challenge by stating, 'the plaintiff argues the Ordinance

keeps them from having the immediate defense of a loaded firearm while at home

because "it is physically impossible to unload and encase a firearm the very instant

one moves from one's home and onto the public road." (Dk. 87, p. 54).' See

Dk. 140, p. 22.

With a common sense (i.e. ordinary intelligence) interpretation, the conduct

that the Ordinance prohibited clearly implicated conduct within the core of the

Second Amendment right and; thus, must be analyzed under strict scrutiny and;

any interpretation which fails to give such notice would leave the Ordinance

unconstitutionally vague.

## CONCLUSION

This Court of Appeals should reverse the grant of summary judgment by the

district court and remand with instructions to proceed to trial.

# REQUEST FOR ORAL ARGUMENT

Appellants respectfully requests that this Court hear oral argument.

This appeal raises many serious Constitutional issues regarding

enumerated fundamental constitutional rights.

Respectfully submitted,

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

**Jonathan Clark ( pro se )**
6800 Maurer Road
Shawnee, Kansas 66217
Phone: (913) 951-6425

# CERTIFICATE OF COMPLIANCE

with required PRIVACY redactions.

Appellants hereby certify that:

1. All required privacy redactions have been made to
   the Appellants' brief.

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

**Jonathan Clark ( pro se )**
6800 Maurer Road
Shawnee, Kansas 66217
Phone: (913) 951-6425

55

## CERTIFICATE OF COMPLIANCE

with Type-VOLUME LIMIT, Typeface Requirements, and

Type Style Requirements

Appellants hereby certify that:

2. This brief complies with the type-volume imitation of Fed. Rules. App. P. 32(a)(7)(B) because this brief does not exceed 13,000 words (specifically contains 13,000 words or 67,007 characters), excluding the parts of the brief exempted by Fed. Rules App. P. 32(a)(7)(B)(iii).

3. This brief complies with the typeface requirements of Fed. Rules App. P. 32(a)(5) and the type style requirements of Fed. Rules App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

**Jonathan Clark ( pro se )**
6800 Maurer Road
Shawnee, Kansas 66217
Phone: (913) 951-6425

56

## CERTIFICATE OF SERVICE

Appellants hereby certify that service was made by mailing

true and correct copies of the foregoing

BRIEF OF APPELLANT

by deposit in the United States Mail, Postage prepaid,

on April 6, 2017 addressed to:

Michael K. Seck,
      Christopher B. Nelson,
      FISHER, PATTERSON, SAYLER & SMITH, LLP
      51 Corporate Woods, Suite 300
      9393 West 110th Street
      Overland Park, Kansas 66210

and to:
      Ellis Rainy
      13851 West 63rd Street, #161
      Shawnee, Kansas 66216

and to:
      Karen Torline
      Assistant City Attorney
      City of Shawnee, Kansas
      5860 Renner Road
      Shawnee, Kansas 66217

Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904

Jonathan Clark, 6800 Maurer Road, Shawnee, Kansas [66217] 913-951-6425

57