# No. *17*-3046

## United States Court of Appeals

## for the Tenth Circuit

**ERIC S. CLARK, JONATHAN CLARK**

Plaintiffs-Appellants

v.

**CITY OF SHAWNEE, KANSAS**

Defendant-Appellee

Appeal from the U.S. District Court

for the District of Kansas

The Honorable Sam A. Crow, District Judge

( 5:15-cv-04965-SAC )

## MOTION TO CERTIFY A QUESTION OF STATE LAW TO THE KANSAS SUPREME COURT

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

**Jonathan Clark ( pro se )**
6800 Maurer Road
Shawnee, Kansas 66217
Phone: (913) 951-6425

**Statement of the opposing party's position:**

Appellants have conferred with counsel of record in this case concerning the relief sought in this motion and Appellee opposes the motion.

**Grounds and Relief Sought:**

This motion is filed at the same time as, but separately from, the appellants' brief on the merits, pursuant to (i.e., grounds of) Local Rule 27.2(C), Appellants seeks to have this Circuit Court certify questions to the Kansas Supreme Court.

**ARGUMENT**

The interpretation of State law is material and relevant to the instant case in that it would be dispositive of issues (See certified question in *Pino v. US*, 507 F. 3d 1233 - Court of Appeals, 10th Circuit 2007 ) and Appellants assert that the district court erred in the interpretation of State law, which constitutes not only an error of law, but the effect of that error is highly prejudicial because under the proper interpretation, claims in the Complaint would be clearly meritorious.

Whether certification is appropriate as a *de novo* matter without regard to the district court's assessment. See *Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1001-02 (10th Cir. 2005); *Copier v. Smith & Wesson Corp.*, 138 F.3d 833, 838-40 (10th Cir. 1998). Certifying a question is appropriate where the question (1) may be determinative of the case at hand and (2) is sufficiently novel. See *Delaney v. Cade*, 986 F.2d 387, 391 (10th Cir. 1993); see *Lehman Bros. v. Schein*, 416 U.S.

1

386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (finding certification particularly appropriate where the legal question is novel and the applicable state law is unsettled). The questions in this case fits those criteria presupposing that the Court is not content to rely instead upon opinions of the State's Attorney General in lieu of certifying questions to the State's Supreme Court. Reliance upon the opinions of the State's Attorney General in conjunction with how the State's "general preemption" statutes are properly to be construed would reach a different conclusion than that reached by the district court which failed to account for the interplay of language in the general preemption and language in a specific exemption, i.e., the conflict noted in Kansas Attorney General opinion 2011-024 on page 2, in footnote 3, which also referenced the United States Supreme Court opinion of *Muscarello v. U.S.*, 524 U.S. 125, 135 (1998). That conflict was pointed to the the A.G. opinion stating that "it is necessary to analyze whether any of the statutory exceptions to that **general** preemption apply." See also Dk.120, p. 12. The use of "general" preemption is used to identify the supremacy, for interpretation purposes, of the language of "*the state's general policy of* preemption of local authority to regulate firearms." See Dk. 8, p. 6.

Kansas has identified preemption statutes as a matter of law. See *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*,

2

292 Kan. 285, 294, 255 P.3d 1186 (2011) ("Preemption is a question of law

over which this court exercises de novo review.").

"There are two primary categories of preemption: express preemption

and implied preemption. Implied preemption also has two subcategories:

field preemption and conflict preemption." *Miami County, 292 Kan. at 294.*

"A local ordinance is conflict preempted where it permits what the state

statute forbids or prohibits what the statute authorizes. 216 Kan. at Syl. ¶ 6.

Kan. S.Ct. No. 100,396 --

> The legislature may preempt the constitutional authority of cities only in the
> manner prescribed by the Home Rule Amendment to the Kansas
> Constitution, Article 12, § 5. *State ex rel. Kline v. Board of Comm'rs of
> Unified Gov't of Wyandotte Co./KC*, 277 Kan. 516, Syl. ¶ 2, 85 P.3d 1237
> (2004). While the Home Rule Amendment empowered cities to determine
> local affairs, the "'home rule power does not authorize cities to act where the
> state legislature has precluded municipal action by clearly preempting the
> field with a uniformly applicable enactment.'" 277 Kan. At 520 (quoting
> *Kansas City Renaissance Festival Corp. v. City of Bonner Springs*, 269 Kan.
> 670, 673, 8 P.3d 701 [2000]).

**K.S.A. 2013 Supp 12-16,124** (preemption statute) and K.S.A. 2013 Supp. 75-7c20

et. al. (KPFPA, Kansas Personal and Family Protection Act) were all uniform

enactments applicable to all counties and all cities.

"A city ordinance should be permitted to stand unless an actual conflict

exists between the ordinance and a statute, **or unless the legislature has clearly**

**preempted the field so as to preclude municipal action.** See *Claflin v. Walsh*,

3

212 Kan. at 7; *City of Junction City v. Lee*, 216 Kan. 495, 501, 532 P.2d 1292

(1975)." *Moore v. City of Lawrence*, 232 Kan. 353 (1982).

While the opinions of a State's Attorney General are not binding on this

Court, this Court may take, and is hereby moved to take, judicial notice of the

opinions of the Kansas Attorney General which address interpretation of State law

concerning the topic of openly carrying loaded firearms.

The Kansas Attorney General in Kan. A.G. Opinion 2011-006, at page 2,

stated that:

> "The legislative history of this provision is instructive. When
> introduced, the 2007 bill initially deleted all exceptions to the
> prohibition against cities and counties regulating the purchase,
> transfer, ownership, storage or transporting of firearms or
> ammunitions.[fn 4, "2007 HB 2528."] That suggests that the original
> intent of the 2007 amendment was to create uniformity in the state law
> to **advance the policy** of **preemption of local authority to regulate
> firearms.**"

See http://ag.ks.gov/docs/default-source/ag-opinions/2011/2011-006.pdf

See also Kan. A.G. Op. 2011-24, p. 2, footnote 3, noticing a conflict based

on the language "transport" and "carry":

> "K.S.A. 2010 Supp. 12-16,124(a): "No city…shall adopt any
> ordinance, resolution or regulation… governing the purchase, transfer,
> ownership, storage or transporting of firearms or ammunition…" We
> note that this preemption language bars the "transporting of firearms."
> The United States Supreme Court, in discussing a case regarding
> firearms, has discussed the relationship between the terms "carry" and
> "transport" and has noted that

> " 'transport' is a broader category that includes 'carry' ".
> *Muscarello v. U.S.*, 524 U.S. 125, 135 (1998). Given the general
> intent of the Kansas legislature to preempt local regulation of
> firearms, as we discussed in Opinion 2011-06, and given the Supreme
> Court's observation in *Muscarello* that "transport" includes "carry,"
> we believe that **the preemption language** in K.S.A. 2010 Supp. 12-
> 16, 124(a) **includes the open carry of firearms** and that, therefore,
> **it is necessary to analyze** whether any of the statutory exceptions
> [which reference "transport"] to that general preemption [would]
> apply [because of conflict preemption, i.e., proper interpretation]."

And that opinion also addressed a similar ordinance of another City and held that :

> "the Wichita City Code prohibits *any* manner of openly carrying a
> loaded firearm while on property open to the public. By contrast,
> K.S.A. 2010 Supp. 12-16,124(b)(2) allows a city to regulate "the
> *manner* of openly carrying a loaded firearm," which implies that a city
> may adopt ordinances to govern the way, mode, or method of such
> open carry, but may not ban the practice entirely. <u>A city ordinance
> prohibiting *any* form of open carry of a loaded firearm on public
> property is a factual circumstance not within the exception created by
> K.S.A. 2010 Supp. 12-16,124(b)(2).</u> As such, we opine that Section
> 5.88.010(1)(e) of the Wichita City Code is preempted."
> (emphasis added)

Like that Wichita code, the 9.13.040 Ordinance of the City of Shawnee in this

case did not regulate "the *manner* of **openly** carrying a **loaded** firearm," rather,

it prohibited *all* forms of "**open** carry of a **loaded** firearm" by those who did not

possess a KPFPA license and traveled in a vehicle on property open to the public.

What is not addressed in the Attorney General opinions and is also pertinent

to the interpretation concerning the preemption statute is -- What constitutes

**openly** carrying of a firearm as found in of K.S.A. 12-16,124 Supp. 2012?

Or conversely – What constitutes **concealed** carrying of a firearm?

Appellants contend that concealed carrying must mean carrying with **intent** to hide the firearm from common observation **and** doing so to aid an unlawful purpose. Kansas has not explicitly defined the term "concealed" in the context of carrying a firearm ***in a vehicle*** but has used the explicit term "concealed" in relation to carrying weapons within K.S.A. 21-6302. And K.S.A. 21-6302 included an exception as "any pistol, revolver or other firearm concealed on one's person **except when on the person's land** or in the person's abode or fixed place of business" (emphasis added). It would be logical that the legislature would have understood that transporting a firearm to a "person's land" by use of a vehicle (most common mean of conventional locomotion) would have to provide for, or constitute, some manner of carrying in a vehicle that was not considered "concealed". Otherwise, the legislation leads to the absurd results that an activity (concealed carry) is allowed on a person's land but makes it impossible to lawfully use an automobile or other vehicle to get an openly carried firearm from the point of purchase to that land.

Other States have addressed what "concealed" carrying of a firearm means and the following briefly touches on some of those definitions and understandings.

West Virginia defined concealed as "such a manner that another person in the ordinary course of events would not be placed on notice that the deadly weapon

was being carried". See W.V. §61-7-2. Definitions. See also

http://www.ago.wv.gov/gunreciprocity/Documents/2016%20Firearms%20Handbook.pdf

Florida defines concealed carrying as "carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person," See Florida Statute 790.001(2).

Alaska defines it as "covered or enclosed in any manner so that an observer cannot determine that it is a weapon without removing it from that which covers or encloses it or without opening, lifting, or removing that which covers or encloses it" See AS 11.61.220

Idaho 18-3302 defines it as "carried on or about the person in a manner not discernible by ordinary observation"

Liberty University in Virginia defines a concealed weapon as a weapon which "appears so deceptively as to disguise the weapon's true nature."

A Wisconsin case held that "[i]f the constitutional right to keep and bear arms for security is to mean anything, it must, as a general matter, permit a person to possess, carry, and sometimes conceal arms to maintain the security of his private residence or privately operated business, and to safely move and store weapons within these premises." See *State v. Hamdan*, 2003 WI 113, 264 Wis.

2d 433, 665 N.W.2d 785, 01-0056 at ¶61. That case recognized those instances where "no unlawful purpose motivated concealment" must be within the right. Id. at ¶6. It also noted that "many states have recognized, either by case law or statute, a special intersection between the right to bear arms and the protection of one's own property. For example, one state court has held that a citizen enjoys a common law right to carry a concealed weapon in the citizen's own home" Id. at ¶61.

Reference was also made to debate about what the Kansas right to keep and bear arms meant, but Kansas also amended its constitution and there is scant Kansas caselaw on the matter, not unlike the Federal amendment.

While an earlier Wisconsin court held that a "handgun on the seat of a car that was indiscernible from ordinary observation by a person outside, and within the immediate vicinity, of the vehicle was hidden from view for purposes of determining whether the gun was a concealed weapon under this section." *State v. Walls*, 190 Wis. 2d 65, 526 N.W.2d 765 (Ct. App. 1994).", it is also clear that, for that pre-*Heller* opinion, the court relied upon that there was no acceptance of a right of self defense, but only a privilege. See, e.g., "Under the facts of the case, the privilege of self-defense was inapplicable to a charge of carrying a concealed weapon. *State v. Nollie*, 2002 WI 4, 249 Wis. 2d 538, 638 N.W.2d 280, 00-0744. And, thus, the later case of *Hamden* effectively overruled *Walls* as examined

8

"those circumstances where limitation is necessary to narrowly accommodate the

constitutional right to keep and bear arms for lawful purposes" See *State v.*

*Hamdan*, 665 NW 2d 785 - Wis: Supreme Court 2003 at ¶39.

> 'The common understanding of "security" does not implicate an imminent
> threat. Rather, it connotes a persistent state of peace. We believe the domain
> most closely associated with a persistent state of peace is one's home or
> residence, followed by **other places in which a person has a possessory
> interest**. A person is less likely to rely on public law enforcement for
> protection in these premises and is more likely to supply his own protection.
> In fact, a person who takes no initiative to provide security in these private
> places is essentially leaving security to chance.'

Id. at ¶66.

> If the constitutional right to keep and bear arms for security is to mean
> anything, it must, as a general matter, permit a person to possess, carry, and
> sometimes conceal arms to maintain the security of his private residence or
> privately operated business, and to safely move and store weapons within
> these premises.

Id. at ¶66.

Appellants would add that to "safely move and store weapons **within** these

premises" can necessarily entail the prerequisite need(and prerequisite right)

to "safely move and store weapons **between** these premises" such as by use of

an automobile. Supreme Court decisions have long acknowledged the special

possessory interests associated with one's home and for those whose automobile

is coterminous with their home (live in their automobile) whether  seasonally like

many with Recreational Vehicles(RV) or full time by some who embrace that

lifestyle. See, e.g.,   http://www.youtube.com/watch?v=9DISFZM14xE

A lesser expectation of privacy in a motor vehicle stemmed from a case over

forty years ago, *Cardwell v. Lewis*, 417 U.S. 583 (1974), where the Court declared:

> because its function is transportation and it seldom serves as one's
> residence or as the respository of personal effects. A car has little
> capacity for escaping public scrutiny. It travels public thoroughfares
> where both its occupants and its contents are in plain view . . . .This is
> not to say that no part of the interior of an automobile has Fourth
> Amendment protection; the exercise of a desire to be mobile does not,
> of course, waive one's right to be free of unreasonable government
> intrusion.

While a lesser expectation of privacy may hold true when in an automobile, the

possessory interest in protecting one's life and property is identical whether in a

house or in an automobile. That is, "the exercise of a desire to be mobile does not,

of course, waive one's right" to keep and bear arms. This alone logically shows that

if a firearm is considered as concealed by virtue of being in an automobile, then the

right to keep and bears arms must cover some amount of "concealed carry".

Even if *State v. Hamdan* is not understood as overruling *State v. Walls*, the *Walls*

court made clear that "[w] Where evidence is conflicting as to whether weapon

located inside vehicle was indiscernible from ordinary observation of person

located outside and within immediate vicinity of vehicle, that question remains

with ambit of jury's fact-finding duty in prosecution." In the present case, there was

a rationalization made by the court that all weapons in a vehicle would be

considered as factually concealed by the mere fact of being in a vehicle rather than

10

allowing an individual case by case determination of "concealed". That likely cuts

against the jurisprudence of many States and the Federal Rules of Evidence.

See Dk. 150, p. 34, 'The court agrees that firearms transported in vehicles will

"almost always" not be open but hidden from the view of others outside of the

vehicle.' Would it be strange to have a court rule that because small children in

vehicles are "almost always" hidden from the view of others outside of the

vehicle, that any small child in a vehicle is to be factually considered as concealed?

North Carolina 9-35 § 14-269 provides a defense to a charge of carrying

concealed weapons if the "defendant did not use or attempt to use the weapon for

an illegal purpose." This North Carolina statute strikes very near to what is meant

by constitutional carry.

Utah 76-10-501 defines it as "covered, hidden, or secreted in a manner that

the public would not be aware of its presence; and readily accessible for

**immediate** use." The immediate restraint here would indicate that an "unloaded"

firearm would not be considered concealed even if it were "covered, hidden, or

secreted in a manner that the public would not be aware of its presence".

Mississippi passed legislation in 2013 to defined concealed to mean

"hidden or obscured from common observation".

Oklahoma §21-1290.2 defines concealed as "a loaded or unloaded pistol, the

11

presence of which is not openly discernible to the ordinary observation of a reasonable person;" and alternatively defines unconcealed as "carried upon the person in a belt holster or shoulder holster that is wholly or partially visible, or carried upon the person in a scabbard or case designed for carrying firearms that is wholly or partially visible;" This would seem to include a fully encased firearm provided the encasing was designed for carrying firearms, even such as a rifle case that is a cloth bag with a handle sewn on (found in many retailer stores).

A Colorado court has indicated that concealed means placed out of sight so as not to be discernible or apparent by ordinary observation. *People ex rel. O.R.*, 220 P.3d 949 (Colo. App. 2008). In keeping with the fact sensitive nature of whether something is "concealed", a Colorado court indicated that **the question of** whether a weapon is concealed is question of fact for the jury which should not be summarily determined by the trial judge at the time that he rules on the defendant's motion to suppress. *People v. Vincent*, 628 P.2d 107 (Colo. 1981). In keeping with the constitutional requirement of *mens rea* for crimes, a Colorado court indicated that the "Defendant could not be convicted of carrying a concealed weapon without the prosecution proving that defendant intended to use this short-bladed knife as a weapon. While the characteristics of an instrument may be an important factor in determining the intended purpose of an instrument, the language of the concealed weapons statute and established precedent establishes

that a knife's design does not, by itself, **prove** that the person carrying it **intended** to use it as a weapon. A.P.E. v. People, 20 P.3d 1179 (Colo. 2001)."

Colorado 18-12-105. Unlawfully carrying a concealed weapon provides exceptions including, at (2)(b), "A person in a private automobile or other private means of conveyance who carries a weapon for lawful protection of such person's or another's person or property while traveling". This is in keeping with longstanding exceptions in many States which sought to avoid infringement on the right to keep and bear arms.

New Mexico 29-19-2 states "not visible to the ordinary observations of a reasonable person".

Even though it speaks to the "reasonable belief" to justify a stop, and not specifically to the meaning of "concealed", the twenty five page dissent of the recent en banc rehearing of Fourth Circuit No. 14-4902 is informative where it was stated that 'concealed firearms were hallmarks of criminal activity, deadly weapons carried by law-breakers to facilitate their crimes. So it followed, without much need for elaboration, that if a suspect legally stopped by the police was carrying a gun, then he was not only "armed" but also "dangerous," justifying a protective frisk under Terry v. Ohio, 392 U.S. 1 (1968). But that is no longer the case, at least in states like West Virginia.' Notably, West Virginia is not alone, nor is Kansas the

only other state to have adopted constitutional carry or "Vermont" carry. Vermont

may rightly take pride in having steadfastly abided by the constitutional mandates

concerning the Second Amendment throughout its history. See, e.g., *State v.*

*Rosenthal*, 55 A. 610, 610 (Vt. 1903). See also

http://crimeresearch.org/2017/01/year-will-likely-16-17-states-allow-people-carry-
concealed-handguns-without-permit-constitutional-carry

Under North Dakota 62.1-04-01, it means "carried in such a manner as to

not be discernible by the ordinary observation of a passerby". It seems common

sense that "ordinary observation of a passerby" would include such observations as

by those standing on a sidewalk and looking at the dashboard, center console,

passenger seat, or door pocket of a vehicle stopped directly adjacent on the road,

such that if it can be observed in those circumstances, it is not "concealed".

Regardless of what "concealed" means, whether or an object is "concealed", or

whether or not an object is hidden from common observation, is a factual

determination  and; factual determinations are for the Trier of fact, not for

conclusory allegations of some legal theory.

As for the issue of statutory interpretation, Appellants offer a fictitious

example to demonstrate how general preemption interpretation is applied under

Kansas law. If there was a general preemption statute that preempted all cities

from regulating "**openly carrying** of peeled bananas" but contained an exception

such that a city was not prohibited from regulating "the **manner of transporting** bananas", could a city then prohibit the "openly carrying of peeled bananas" by requiring that "bananas must have the peeling intact when being transported"? A standard rule of interpretation, *expressio unius est exclusio alterius*, to express one thing is to exclude another, would point to the answer as being . . . no. The City could require bananas transported in the cargo hold of a truck to have the peeling intact, but the driver of that truck could still carry a peeled banana in his lunchbox. That is, the prohibition against transporting peeled bananas would apply to <u>all</u> categories of transporting except for the <u>one</u> category of "carrying".

When a legislature uses different terms within the same statute it is to be presumed that those terms have different meanings unless the context makes clear that the refer to the same exact thing. Two of the exceptions to K.S.A. 12-16,124 Supp. 2012 which was a general preemption against regulation of firearms included subsection b(2) to allow "regulating the manner of openly **carrying** a loaded firearm on one's person; or in the immediate control of a person" and included subsection b(4) to allow regulation of firearms "**transported** in any air, land or water vehicle". The common sense understanding of the whole (i.e., *in pari materia*) is that use of **carry** refers to <u>one specific form</u> of transport leaving the word **transport** to refer to <u>all other forms</u>. This is a very common method of expression such as making the statement that

"You may not pull the two front teeth, but you may pull teeth".

While not necessary to the interpretation, the later versions of the same statute, including the 2014 amendment, support that conclusion because of including both carrying and transporting. Had the legislature intended "transporting" to encompass "carrying" it would be superfluous to include both in the list of general preemption prohibitions. See current K.S.A. 12-16,124(a):

> "No city or county shall adopt or enforce any ordinance, resolution or regulation, and no agent of any city or county shall take any administrative action, governing the requirement of fees, licenses or permits for, the commerce in or the sale, purchase, transfer, ownership, storage, **carrying, transporting** or taxation of firearms or ammunition, or any component or combination thereof."

This is much like saying "You may not pull the two front teeth, and you may not pull any of the other teeth".

The argument above would apply equally well to "use" and carry". **Generally** speaking, carrying a firearm **could** be said to be "using" the firearm for preparation of self defense just as carrying a firearm wherever one goes **could** be said to be transporting a firearm wherever one goes. But when two different terms that **could**, in some circumstance, generally fit the same conduct and; both used within the same statute, the presumption is that the two words are intended to have distinctly separate meanings unless the context makes clear that they are

16

completely interchangeable. This is because an aim of making law is to be very

specific in order to give proper notice (due process). In *Bailey v. United States*,

516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the U.S. Supreme Court

faced just such an interpretation question and concluded that 'there is no evidence

to indicate that Congress intended to expand the meaning of "use" so far as to

swallow up any significance for "carry."' In the State statute at issue in this case,

there is likewise no evidence to indicate that the legislature intended to expand the

meaning of "transporting" so far as to swallow up any significance for "carrying".

The conflict noted by the Attorney General in the K.S.A. 12-16,124 statute can

be resolved through excluding the one form of transport(i.e., carry) from all other

forms of transport. Absent resolving the conflict in that manner, the statute

would remain sufficiently ambiguous to require use of the interpretive rule as laid

out in *State v. Braun*, Kan. App. No. 103,560 :

> "A special rule, the rule of lenity, guides us when determining the
> meaning of an ambiguous criminal statute. When there is a reasonable
> doubt about the statute's meaning, we apply the rule of lenity and give
> the statute **a narrow construction**. *State v. Chavez*, 292 Kan. 464,
> 468, 254 P.3d 539 (2011); *State v. Reese*, 42 Kan. App. 2d 388, 390,
> 212 P.3d 260 (2009).
>
> Two important policies are served by the rule of lenity. First, people
> should have fair notice of conduct that is criminal. *Reese*, 42 Kan.
> App. 2d at 390. Second, **narrow interpretation** when there is some
> reasonable doubt about a criminal statute's meaning best respects the
> legislature's role in defining what constitutes a crime. Kansas has no
> common-law crimes, K.S.A. 21-3102(1), so something is a crime only

17

> if the legislature says so by statute. If the courts broadly interpreted
> ambiguous criminal statutes, we might inadvertently overstep our role
> and make something criminal even though the legislature had not
> intended that result. See *State v. Knight*, 44 Kan. App. 2d 666, 681,
> 241 P.3d 120 (2010), *rev. denied* 292 Kan. 967 (2011)."
> (emphasis added)

For the two terms to co-exist without conflict and comport with a narrow

construction would be the interpretation that **use of "carrying" refers to <u>one</u>**

**specific form of transporting and the use of "transporting" refers to all <u>other</u>**

**forms.**

Finally, the Kansas Supreme Court has power to answer questions of law

certified to it by this Circuit Court. See Kansas Statutes Annotated 60-3201 which

provides:

> Power to answer. The Kansas supreme court may answer questions of law
> certified to it by the supreme court of the United States, a court of appeals of
> the United States, a United States district court or the highest appellate court
> or the intermediate appellate court of any other state, when requested by the
> certifying court if there are involved in any proceeding before it questions of
> law of this state which may be determinative of the cause then pending in
> the certifying court and as to which it appears to the certifying court there is
> no controlling precedent in the decisions of the supreme court and the court
> of appeals of this state.

WHEREFORE, Appellants respectfully request that the Court certify

questions of State law to the Kansas Supreme Court to ascertain the proper

interpretation of the laws of the State of Kansas as of December 2, 2013

concerning preemption of the City's regulation of **openly** carrying of **loaded**

firearms and the meaning of "openly" in that context, and in relation to the statute's use of the terms carry and transport, specifically the questions:

1) Under Kansas law, concerning the conflict between "carry" and "transport" as found in K.S.A. 12-16,124 Supp. 2012 (as noted by Kansas Attorney General opinion 2011-024 on page 2, in footnote 3), does the proper interpretation mean that **carry** refers to <u>one specific form</u> of transport and mean that the term **transport** refers to <u>all **other** forms</u> of transport?

2) Under Kansas law, is the meaning of "openly" (in relation to carrying a firearm), as found in K.S.A. 12-16,124 Supp. 2012, the complement to "concealed" carry, as found in K.S.A. 21-6302 (i.e., the combination of both, openly and concealed, create the full spectrum of "carry" )?

3) Under Kansas law, would all manners of carrying a firearm *in a vehicle* constitute carrying a "concealed" firearm, specifically if a firearm were not hidden from ordinary observation in a door pocket or in the back window of a pickup truck?

4) Under Kansas law, would carrying a firearm in a manner that constituted "openly" carrying be converted to a manner that constituted "concealed" solely by stepping behind a curtain to use a latrine?

Respectfully submitted,
Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904
Jonathan Clark, 6800 Maurer Road, Shawnee, Kansas [66217] 913-951-6425

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

I/we hereby certify that:

1. This motion complies with the type-volume imitation of Fed. Rules. App. P. 27(d)(2)(A) because this motion does not exceed 5,200 words (specifically **4,823** words), excluding the parts exempted by Fed. Rules App. P. 27(a)(2)(B).

2. This motion complies with the typeface requirements of Fed. Rules App. P. 32(a)(5) and the type style requirements of Fed. Rules App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904

Jonathan Clark, 6800 Maurer Road, Shawnee, Kansas [66217] 913-951-6425

# No. *17*-3046

---

## United States Court of Appeals

## for the Tenth Circuit

---

### ERIC S. CLARK, JONATHAN CLARK

Plaintiffs-Appellants

v.

### CITY OF SHAWNEE, KANSAS

Defendant-Appellee

---

Appeal from the U.S. District Court

for the District of Kansas

The Honorable Sam A. Crow, District Judge

( 5:15-cv-04965-SAC )

---

## ATTACHMENT FOR
## MOTION TO CERTIFY A QUESTION OF STATE LAW
## TO THE KANSAS SUPREME COURT

---

**Eric S. Clark ( pro se )**
1430 Highway K 273
Williamsburg, Kansas 66095
Phone: (785) 214-8904

**Jonathan Clark ( pro se )**
6800 Maurer Road
Shawnee, Kansas 66217
Phone: (913) 951-6425

This Court's Local Rule 27.2(C) provides that "[a] motion to certify should be filed at the same time as, but separately from, the moving party's brief on the merits." Appellant's make mention of such a filing in their brief. See Dk. 01019792361, pg 14 which contained, "(See also motion to certify a question of State law filed contemporaneously with this brief.)" Appellants mailed such a motion for filing and made service along with the Appellant's Brief; however, on April 25, 2017, after inquiry into why the motion was not on the docket, the court clerk indicated that the motion was not delivered. For that reason, Appellant's mailed and served a duplicate copy of that original motion except for new service date, new original signatures overlaid, and this attachment. As 27.2(E) provides that "[a] motion to certify is ordinarily referred to the panel of judges assigned to decide the appeal on the merits and is considered at the same time as the arguments on the merits.", the short delay in getting the motion onto the docket should have little or no impact on the court or the parties.

For reference, also attached are copies of those pages containing signatures of the earlier April 6, 2017 mailing.

firearms and the meaning of "openly" in that context, and in relation to the

statute's use of the terms carry and transport, specifically the questions:

1) Under Kansas law, concerning the conflict between "carry" and "transport"
as found in K.S.A. 12-16,124 Supp. 2012 (as noted by Kansas Attorney
General opinion 2011-024 on page 2, in footnote 3), does the proper
interpretation mean that **carry** refers to <u>one specific form</u> of transport and
mean that the term **transport** refers to <u>all **other** forms</u> of transport?

2) Under Kansas law, is the meaning of "openly" (in relation to carrying a
firearm), as found in K.S.A. 12-16,124 Supp. 2012, the complement to
"concealed" carry, as found in K.S.A. 21-6302 (i.e., the combination of both,
openly and concealed, create the full spectrum of "carry" )?

3) Under Kansas law, would all manners of carrying a firearm *in a vehicle*
constitute carrying a "concealed" firearm, specifically if a firearm were
not hidden from ordinary observation in a door pocket or in the back
window of a pickup truck?

4) Under Kansas law, would carrying a firearm in a manner that constituted
"openly" carrying be converted to a manner that constituted "concealed"
solely by stepping behind a curtain to use a latrine?

Respectfully submitted,

Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904
Jonathan Clark, 6800 Maurer Road, Shawnee, Kansas [66217] 913-951-6425

19

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

I/we hereby certify that:

1. This motion complies with the type-volume imitation of Fed. Rules. App. P. 27(d)(2)(A) because this motion does not exceed 5,200 words (specifically **4,823** words), excluding the parts exempted by Fed. Rules App. P. 27(a)(2)(B).

2. This motion complies with the typeface requirements of Fed. Rules App. P. 32(a)(5) and the type style requirements of Fed. Rules App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904

Jonathan Clark, 6800 Maurer Road, Shawnee, Kansas [66217] 913-951-6425

## CERTIFICATE OF SERVICE

I/we hereby certify that, on April 6, 2017,

service was made by mailing a true and correct copy of the foregoing

MOTION TO CERTIFY A QUESTION OF STATE LAW
     TO THE KANSAS SUPREME COURT

by deposit in the United States Mail, Postage prepaid, addressed to

each of the following:

Michael K. Seck, Christopher B. Nelson,
FISHER, PATTERSON, SAYLER & SMITH, LLP
Building 51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas 66210

Ellis Rainy
13851 West 63rd Street, #161
Shawnee, Kansas 66216

Karen Torline
Assistant City Attorney
City of Shawnee, Kansas
5860 Renner Road
Shawnee, Kansas 66217

And the original and three copies to:

Clerk, The United States Court of Appeals for the Tenth Circuit
The Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257


Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904


Jonathan Clark, 6800 Maurer Road, Shawnee, Kansas [66217] 913-951-6425

## CERTIFICATE OF SERVICE

I/we hereby certify that, on April 6, *25* 2017,

service was made by mailing a true and correct copy of the foregoing

MOTION TO CERTIFY A QUESTION OF STATE LAW
     TO THE KANSAS SUPREME COURT

by deposit in the United States Mail, Postage prepaid, addressed to

each of the following:

Michael K. Seck, Christopher B. Nelson,
FISHER, PATTERSON, SAYLER & SMITH, LLP
Building 51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas 66210

Ellis Rainy
13851 West 63rd Street, #161
Shawnee, Kansas 66216

Karen Torline
Assistant City Attorney
City of Shawnee, Kansas
5860 Renner Road
Shawnee, Kansas 66217

And the original and three copies to:

Clerk, The United States Court of Appeals for the Tenth Circuit
The Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257


Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904


Jonathan Clark, 6800 Maurer Road, Shawnee, Kansas [66217] 913-951-6425

PRESS FIRMLY TO SEAL          PRESS FIRMLY TO SEAL

PRIORITY MAIL
POSTAGE REQUIRED

# PRIORITY
# ★ MAIL ★

 **DATE OF DELIVERY SPECIFIED\***

 **UNITED STATES POSTAL SERVICE.**    *Retail*

**P** | US POSTAGE PAID
**$6.65**

Origin: 66067
Destination: 80257
1 Lb 9.70 Oz
Apr 25, 17
1969190590-13      1006

**PRIORITY MAIL ®2-Day**

Expected Delivery Day: 04/27/2017

**USPS TRACKING NUMBER**



9505 5154 5872 7115 0961 35

EP14F July 2013
OD: 12.5 x 9.5

P S 0 0 0 0 1 0 0 0 0 1 4

**FROM:**

Eric S. Clark
1430 Dane Ave
Williamsburg, Kansas 66095

**TO:**

Clerk, The United States Court of Appeals
for the Tenth Circuit
**The Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257**

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

 **UNITED STATES POSTAL SERVICE.®**

This envelope is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.