# In the United States Court of Appeals For the Tenth Circuit

_____

ERIC CLARK and JONATHAN CLARK,
*Plaintiffs/Appellants*,

v.

THE CITY OF SHAWNEE, KANSAS,
*Defendant/Appellee*.

Case No. 17-3046
_____

**BRIEF OF APPELLEE**
_____

Appeal from the United States District Court for the District of Kansas
The Honorable Sam A. Crow, Case No. 5:15-cv-04965-SAC-KGS
_____

Michael K. Seck, #11393
Christopher B. Nelson, #25548
**FISHER, PATTERSON, SAYLER & SMITH, L.L.P.**
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas  66210
(913) 339-6757 / Fax: (913) 339-6187
mseck@fisherpatterson.com
cnelson@fisherpatterson.com

Appellee does not request oral argument.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF RELATED CASES ......................................................... vi

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ................. 3

STATEMENT OF THE CASE....................................................................... 5

SUMMARY OF THE ARGUMENT ............................................................ 9

ARGUMENTS AND AUTHORITIES ....................................................... 11

I.     APPLICABLE STANDARD OF REVIEW ..................................... 11

II.    ANALYSIS ...................................................................................... 12

       A.     Eric Clark lacked standing to bring his claim. ......................... 14

       B.     The Ordinance was constitutional as it was applied to Jonathan
              Clark. ...................................................................................... 19

              1.     Because the Ordinance does not implicate the core right of
                     the Second Amendment, intermediate scrutiny applies. 20

              2.     Because the Ordinance advances important government
                     interests by means substantially related to those interests,
                     the Ordinance was constitutional.................................... 24

              3.     The Clarks do not have the right to a decision from this
                     Court on hypotheticals not at issue in this case. ........... 28

              4.     The Ordinance does not violate the equal protection clause
                     or due process. .............................................................. 30

       C.     The Ordinance was constitutional on its face and was not
              preempted by Kansas law........................................................ 32

              1.     The Ordinance was not preempted by Kansas law........ 32

2.      The Clarks fail to carry the heavy burden of a facial challenge to the Ordinance. ........................................... 34

CONCLUSION ............................................................................. 36

STATEMENT REGARDING ORAL ARGUMENT .................................. 37

CERTIFICATE OF COMPLIANCE ............................................................. 39

CERTIFICATE OF SERVICE ..................................................................... 40

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Binderup v. Atty. Gen. U.S. of America*, 836 F.3d 336 (3rd Cir. 2016) ....... 20

*Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121 (10th Cir. 2015) ................. 21, 25

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973) ............................................... 29

*Chytka v. Wright Tree Serv., Inc.*, 617 F. App'x 841 (10th Cir.) .................. 13

*City of Williamsburg v. Clark*, 379 P.3d 1155 (Kan. Ct. App. 2016) ...........37

*Claflin v. Walsh*, 212 Kan. 1 (1973) .............................................................. 32

*Clark v. City of Olathe, Kan.*, 136 S. Ct. 541 (2015) .................................... 14

*Clark v. Cty. of Fairfax, Va.*, 136 S. Ct. 2014 (2016) ................................... 14

*Clark v. Fairfax Cty., Va.*, 135 S. Ct. 2363 (2015) ....................................... 14

*Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195 (10th Cir. 2008) ........ 11

*Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537
(10th Cir. 2016) ....................................................................................... 16, 17

*Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129 (10th Cir. 2016) ...................... 11

*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836 (10th Cir. 2005) . 12

*Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012) .................... 21

*Kolbe v. Hogan*, 813 F.3d 160 (4th Cir. 2016) ............................................. 22

*MacArthur v. San Juan Cty.*, 495 F.3d 1157 (10th Cir. 2007) ..................... 12

*Moore v. City of Lawrence*, 232 Kan. 353 (1982) ........................................ 32

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &
Explosives*, 700 F.3d 185 (5th Cir. 2012) ...................................................... 21

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) ................................ 21

*Schrader v. Holder*, 704 F.3d 980 (D.C. Cir. 2013) ..................................... 21

*Schutz v. Thorne*, 415 F.3d 1128 (10th Cir. 2005) ....................................... 11

*Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678
(6th Cir. 2016)................................................................................... 20, 25

*United States v. Booker*, 644 F.3d 12 (1st Cir. 2011).................................. 21

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) .............................. 21

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ....................... 21, 22

*United States v. Huitron-Guizar*, 678 F.3d 1164 (10th Cir. 2012)......... 21, 24

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ........................... 21

*United States v. Masciandaro*, 638 F.3d 458
(4th Cir. 2011)......................................................... 21, 22, 26, 27, 28, 29, 30

*United States v. Platte*, 401 F.3d 1176 (10th Cir. 2005) .............................. 29

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010).......................... 21, 24

*United States v. Salerno*, 481 U.S. 739 (1987).................... 29, 30, 32, 34, 35

*United States v. Williams*, 616 F.3d 685  (7th Cir. 2010)............................ 21

*Wilson v. Glenwood Intermountain Props.*, 98 F.3d 590 (10th Cir. 1996) .. 11

*Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013)................................. 21

## **Statutes & Other Laws**

28 U.S.C. § 1331........................................................................................ 1

Kan. Stat. Ann. § 12–16,124....................................................................... 33

Shawnee City Ordinance 9.13.040 ....................................................... *passim*

## Other Authorities

*Tyler v. Hillsdale Cty. Sheriff's Dep't*, No. 13-1876, 2016 WL 4916936 (6th Cir. Sept. 15, 2016) ........................................................................ 21

*United States v. Bledsoe*, No. CRIM SA08-CR13(2)-XR, 2008 WL 3538717 (W.D. Tex. Aug. 8, 2008) ............................................................ 22

## Rules

10th Cir. R. 28.1(B) ................................................................................ 1

10th Cir. R. 28.4 ................................................................................... 12

Fed. R. App. P. 28(a) ........................................................................... 13

Fed. R. App. P. 28(a)(8) ...................................................................... 12

Fed. R. App. P. 28(b) ........................................................................... 13

Fed. R. App. P. 32 ................................................................................ 37

## Constitutional Provisions

Second Amendment ..................................................................... *passim*

## STATEMENT OF RELATED CASES

Appellee is not aware of any prior or related appeals.

# JURISDICTIONAL STATEMENT

On November 23, 2015, *pro se* plaintiffs Eric and Jonathan Clark ("the Clarks") filed their Complaint in the United States District Court for the District of Kansas against The City of Shawnee, Kansas ("the City"). *Compl.* dated 11/23/15, Vol. I, ECF No. 1, at 1.[1] The Clarks then filed their First Amended Complaint on April 11, 2016. *First Am. Compl.*, dated 4/11/16, Vol. I, ECF No. 24, at 1. Amending their claims for the final time, the Clarks filed their Second Amended Complaint on June 14, 2016. *Second Am. Compl.* dated 6/14/16, Vol. I, ECF No. 45, at 1. In their Second Amended Complaint, the Clarks alleged that Shawnee City Ordinance 9.13.040 ("the Ordinance") violated Eric Clark's Second Amendment rights, Jonathan Clarks' Second Amendment rights, and Jonathan Clark's Fourth Amendment rights. *Second Am. Compl.* dated 6/14/16, Vol. I, ECF No. 45, at 10–12. The district court had subject matter jurisdiction to hear the Clarks' claims under 28 U.S.C. § 1331.

On January 5, 2017, the district court granted the City's Motion for Summary Judgment, disposing of all claims. *Memorandum and Order* dated

---

[1] Because there is no appendix in this case, the City's citations conform with 10th Cir. R. 28.1(B)'s example of a proper citation: the title of the district court document, the date of that document, the record volume, the district court docket number, and the page number within the district court document.

1/5/17, Vol. I, ECF No. 140, at 1–43. On January 5, 2017, the district court entered judgment against the Clarks. *Judgment in a Civil Case* dated 1/5/17, Vol. I, ECF No. 141, at 1. On February 28, 2017, the Clarks filed their Notice of Appeal. *Notice of Appeal* dated 2/28/17, Vol. I, ECF No. 161, at 1–2.

The City contends that the Clarks' appeal was not timely, as raised in Appellee's Motion to Dismiss Appeal as Untimely, filed with this Court on March 3, 2017. The Clarks' appeal is from a final judgment, which disposed of all of the parties' claims. *Judgment in a Civil Case* dated 1/5/17, Vol. I, ECF No. 141, at 6. But the City contends that this Court does not have jurisdiction to hear the appeal due to the untimeliness of the Clarks' Notice of Appeal.

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

The Clarks numerically identify five issues in their opening brief. Appellants' Br. at 1–2. But the City reads the Clarks' "Statement of the Issues" to identify ten distinct issues. They are summarized as follows, with footnotes providing the source for each perceived issue:

1.   The district court erred by finding that the City produced sufficient evidence in support of the objectives of the Ordinance.[2]

2.   The district court applied the wrong standard of scrutiny to the Second Amendment challenge, resulting in an erroneous finding as to the scope of the Second Amendment.[3]

3.   The district court erred in finding that Eric Clark lacked standing.[4]

4.   The district court erred by finding that the Ordinance was not preempted by Kansas law.[5]

5.   The district court erred in deciding when facial challenges may be made to a criminal ordinance when that ordinance implicates an enumerated fundamental right.[6]

6.   The district court applied the wrong standard of review for each of the various challenges (at various points in their brief, the Clarks identify challenges under the First, Second, Fourth, Fifth, and Fourteenth Amendments).[7]

---

[2] Appellants' Br. at 1 (portion of ¶ I.A preceding "and;").
[3] Appellants' Br. at 1 (portion of ¶ I.A following "and;").
[4] Appellants' Br. at 1 (¶ I.B).
[5] Appellants' Br. at 1–2 (¶ I.C).
[6] Appellants' Br. at 2 (portion of ¶ I.D preceding the first "**and;**").
[7] Appellants' Br. at 2 (portion of ¶ I.D following the first "**and;**" and preceding the second "**and;**").

7.      The district court "misapprehended" the due process challenge by dismissing it as duplicative. [8]

8.      The district court failed to perform a facial equal protection analysis of the Ordinance. [9]

9.      The district court erred in its equal protection analysis for "similarly situated" persons. [10]

10.     The district court erred *either* by finding that the Ordinance did not implicate the core Second Amendment right *or* by failing to find that the Ordinance was void for vagueness. [11]

Appellants' Br. at 1–2.

It is unclear why the final issue is stated as an "either, or" situation, as those do not appear to be mutually exclusive issues, but the City does not want to misrepresent the Clarks' chosen framing of the issues.

The City believes there to be three issues: (1) Eric Clark's standing, (2) Jonathan Clark's as-applied challenge to the Ordinance's constitutionality, and (3) Jonathan Clark's facial challenge to the Ordinance's constitutionality, including whether it was preempted by state law.

---

[8] Appellants' Br. at 2 (portion of ¶ I.D following the second "**and;**" and preceding the third "and;" which was not bolded or underlined).

[9] Appellants' Br. at 2 (portion of ¶ I.D following the third "and;" which was not bolded or underlined, and preceding the fourth "and;" which was not bolded or underlined).

[10] Appellants' Br. at 2 (portion of ¶ I.D following the fourth "and;" which was not bolded or underlined).

[11] Appellants' Br. at 2 (¶ I.E).

## **STATEMENT OF THE CASE**

The Clarks, who are *pro se* litigants, filed the underlying action against the City of Shawnee, Kansas alleging a violation of their rights under the Second and Fourth Amendments to the United States Constitution. This case arises out of Officer Nathan Karlin's enforcement of the Ordinance during a traffic stop of Jonathan Clark. Officer Karlin was employed by the Shawnee Police Department. In pertinent part, the Ordinance read at that time and at all times pertinent to this case:

> Criminal Possession of a Firearm is an unlawful act that is prohibited within the City. Criminal Possession of a Firearm is . . . Transporting a Firearm in any air, land, or water vehicle, unless the Firearm is unloaded and encased in a container which completely encloses the Firearm.

On December 2, 2013, Officer Karlin observed a nearby vehicle commit two traffic violations—(1) there was no license plate on a trailer that Officer Karlin rated at 1,000 pounds or more, and (2) the load on the trailer was not secured—so he initiated a traffic stop of truck, which belonged to and was being driven by Jonathan Clark. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 3.

Immediately after stopping his truck, Jonathan got out and walked back to his trailer and started securing the load on his trailer (wooden pallets). When Officer Karlin asked for proof of insurance, Jonathan returned to the

truck to retrieve it. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 3. After Jonathan opened the door and while Jonathan was sitting in the driver's seat, obtaining his proof of insurance, Officer Karlin noticed a Glock handgun in the open driver's door with the magazine loaded into the gun, as well as another magazine right next to it (both magazines were subsequently deemed to be loaded). *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 3–4. The Ordinance prohibited individuals without a concealed carry permit from transporting firearms in a vehicle, unless the firearm was fully encased and unloaded.

Jonathan was placed in handcuffs, detained in the back of the patrol vehicle while Officer Karlin searched his vehicle, given a notice to appear, and released at the scene. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 4. During his search of Jonathan's truck, Officer Karlin found another loaded gun (a .38 special revolver made by ROSSI, also known as Amadeo Rossi), a set of Smith & Wesson handcuffs, a walkie talkie radio, many cases of ammunition, five more loaded magazines for the Glock, and a CZ USA gun mounted light. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 4.

In municipal court, Jonathan was found guilty of the charge of criminal possession of a firearm. *Memorandum and Order* dated 1/5/17, Vol. I, ECF

No. 140, at 4. He appealed that conviction to the district court, at which point the prosecution dropped the charge entirely. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 4.

In the Second Amended Complaint, Count 1 is Eric Clark's claim that the Ordinance violated his Second Amendment rights. Counts 2–4 are all alleged violations of Jonathan Clark's constitutional rights. Count 2 claims the Ordinance violated Jonathan's Second Amendment rights, through the ticket he received for violating the Ordinance. Count 3 claims the Ordinance violated Jonathan's right to be free from unreasonable seizure, because his detention on the side of the road was extended due to the enforcement of the Ordinance. And Count 4 claims the Ordinance violated Jonathan's right to be free from unreasonable searches, because of the search of his vehicle for further evidence of his violation of the Ordinance.

Based on the "Statement of Issues" in Appellants' opening brief, Jonathan appears to have dropped the Fourth Amendment claim on appeal. Even if this Court found that Jonathan did not abandon the Fourth Amendment claim, that claim is entirely dependent on the Second Amendment claim, as the Ordinance only impermissibly extended the stop and allowed for the search *if* the Ordinance was unconstitutional.

Eric was not present during Jonathan's traffic stop. Eric's claimed damages are for "emotional distress, mental anguish, and loss of enjoyment of life" stemming from the threat of arrest and his decision to not carry firearms in his vehicle in Shawnee during the months he was aware of that threat.

Accordingly, all of the Clarks' claims are entirely dependent on the allegation that the Ordinance was unconstitutional.

## SUMMARY OF THE ARGUMENT

The City's argument is that Eric's claim fails because he lacked standing, and Jonathan's claims fail because the Ordinance was not unconstitutional, as it did not violate the Second Amendment in any way.

The Clarks' argument has been that Eric did have standing, the Ordinance was unconstitutional as applied, and the Ordinance was facially unconstitutional. The Clarks' arguments continue to evolve as the case goes on, including a last-second change in strategy before the district court.

The Clarks continue to change the prism through which they ask the Court to view this case. Originally, it was simply an as-applied challenge and a facial challenge. Then the Clarks introduced the idea of Eric Clark's former homelessness, and the corresponding argument that because Eric Clark was once homeless, all public property now qualifies as his "hearth and home." Then the Clarks introduced the idea of whether the Ordinance would have barred someone from carrying rifles on a gun rack on the back of a pickup truck. Then the Clarks introduced the idea of whether the Ordinance would have barred someone who lived in an RV from transporting firearms in their RV. This legal shell game makes it difficult to glean the true issues in this case, which are simply the constitutionality of the Ordinance and Eric Clark's lack of standing.

In their Second Amended Complaint, the Clarks specifically listed out the basis for their claims: the Second and Fourth Amendments. No other basis was provided. Only later did the Clarks decide that they had challenges to the Ordinance arising under the First, Fifth, and Fourteenth Amendments. The Second Amendment Complaint does not support any claims being based on these three amendments.

## ARGUMENTS AND AUTHORITIES

## I.    APPLICABLE STANDARD OF REVIEW

There are two issues in this case that are both reviewed de novo. The first is the challenge to the Ordinance's constitutionality. The second is Eric Clark's standing.

This Court reviews de novo both (1) challenges to the constitutionality of a statute, and (2) a district court's grant of summary judgment. *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1139 (10th Cir. 2016), *cert. denied,* 137 S. Ct. 591, 196 L. Ed. 2d 473 (2016), and *cert. denied,* 137 S. Ct. 593, 196 L. Ed. 2d 473 (2016); *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1198 (10th Cir. 2008).

"We review *de novo* questions of subject matter jurisdiction, including whether a plaintiff has standing to sue." *Schutz v. Thorne*, 415 F.3d 1128, 1132 (10th Cir. 2005) (citing *Wilson v. Glenwood Intermountain Props.,* 98 F.3d 590, 593 (10th Cir. 1996).

Accordingly, this Court will review de novo both Jonathan's challenge to the constitutionality of the Ordinance and Eric's appeal of his standing.

## II.    ANALYSIS

Before turning to the merits of the Clarks' arguments, it is worth noting that the Clarks' brief violates the Federal Rules of Appellate Procedure.

Under FED. R. APP. P. 28(a)(8), the argument portion of an appellant's brief must contain the appellant's contentions and reasons for them, "*with citations to the authorities and parts of the record on which the appellant relies.*" As this Court has recognized, "'Mere conclusory allegations with no citations to the record or any legal authority for support' does not constitute adequate briefing." *MacArthur v. San Juan Cty.*, 495 F.3d 1157, 1160–61 (10th Cir. 2007) (quoting *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 841 (10th Cir. 2005)). The Clarks' brief is replete with legal conclusions and factual allegations that are not followed with a citation either to the record or to legal authority. This is necessarily so regarding the lack of citations to the record, as the Clarks filed their brief 10 days before the district court submitted the record on appeal. Nonetheless, the Clarks do cite to the trial court documents in some instances. The Clarks also cite to caselaw occasionally throughout their brief. But often, no citation is provided following a legal conclusion or factual allegation.

Further, 10th Cir. R. 28.4 disapproves of incorporating by reference portions of lower court briefs or pleadings, explaining that doing so does not

satisfy the requirements of FED. R. APP. P. 28(a) and (b). Nonetheless, the

Clarks attempt to incorporate their "Due Process challenge" as laid out in one

of their motions for summary judgment. Appellants' Br. at 46. This appears to

be an attempt to circumvent this Court's denial of the Clarks' request to

exceed the brief length requirements. The City does not merely assume this,

but rather sees a pattern of this behavior, given the fact that the district court

denied motions from the Clarks on two separate occasions to exceed the page

limit in motions for summary judgment. *Order* dated 8/15/16, Vol. I, ECF No.

76; *Order* dated 8/23/16, Vol. I, ECF No. 79. Undeterred, the Clarks drafted

two separate motions for summary judgment and "incorporated" the

arguments from the first into the second. *Mem. in Supp. of Motion for Partial

Summary Judgment* dated 11/4/16, Vol. I, ECF No. 128-1, at 5

("Incorporation").

While it is true that the Clarks are proceeding *pro se*, that does not

affect the requirement that they adhere to the rules of procedure that apply to

all parties. *Chytka v. Wright Tree Serv., Inc.*, 617 F. App'x 841, 844 (10th

Cir.), *cert. denied,* 136 S. Ct. 229, 193 L. Ed. 2d 172 (2015). And Eric Clark

has an extensive litigation history—which is made clear by his often

Bluebook-conforming citations, use of explanatory parentheticals like

"emphasis added," and other details in his brief that show his understanding

of the litigation process—including three attempts to appeal to the Supreme
Court of the United States,[12] so it is not as though he is unfamiliar with
litigation or unaware of the rules of procedure.

### A.    Eric Clark lacked standing to bring his claim.

The district court's determination that Eric lacked standing was the
court's third chance to consider the issue, allowing Eric a full opportunity to
conduct necessary discovery and present the factual and legal merits of his
standing. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 5.
The district court noted, Eric's claim is "a pre-enforcement challenge to a city
criminal ordinance that has since been repealed" and that the uncontested
record "fully establishes that [Eric] no longer faces any credible threat of
prosecution under the ordinance." *Memorandum and Order* dated 1/5/17, Vol.
I, ECF No. 140, at 5–6. This is necessarily true, because "State law now
forecloses the City from having an ordinance that governs the transportation
of firearms." *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at
6.

The factual basis for Eric's claim has been a moving target throughout
litigation at the trial court level. At first, it was simply that Eric felt his liberty

---

[12] *Clark v. Fairfax Cty., Va.*, 135 S. Ct. 2363, 192 L. Ed. 2d 147 (2015); *Clark v. City of Olathe, Kan.*, 136 S.
Ct. 541, 193 L. Ed. 2d 429 (2015); *Clark v. Cty. of Fairfax, Va.*, 136 S. Ct. 2014, 195 L. Ed. 2d 216 (2016).

was unconstitutionally restrained by the Ordinance, such that he refrained from carrying a loaded or non-encased firearm when traveling through Shawnee. But in the Clarks' response to the City's motion for summary judgment, Eric began shifting the basis for his claim. Perhaps realizing for the first time that the core right of the Second Amendment is the defense of hearth and home, Eric scrambled to find ways to incorporate that into his claim. The two ways he attempted to do this were by claiming (1) that because he was once homeless, all public areas now comprise his hearth and home, and (2) that the address Jonathan claims is Jonathan's home is also Eric's "second home." *Exhibit A for Response to Defendant's Motion for Summary Judgment* dated 4/20/17, Vol. I, ECF No. 120-1, at 1. There is nothing in the record or caselaw that would support either of these very novel theories.

Finally, Eric made the confusing claim that he felt he could not even carry a loaded firearm from his house across his curtilage before getting into his vehicle and driving off his property. *Mem. in Supp. of Motion for Partial Summary Judgment* dated 4/20/17, Vol. I, ECF No. 128-1. Of course, a Shawnee ordinance cannot reasonably be said to compel or prohibit behavior in Williamsburg, Kansas, which is the city Eric has listed in his address in

every signature block on every filing in this case. This allegation finds no support in the record or the law.

There are two distinct factual scenarios at issue that are relevant to Eric's standing: (1) the times Eric drove in Shawnee and did comply with the Ordinance by refraining from transporting firearms in his vehicle, and (2) the times Eric drove in Shawnee and intentionally violated the Ordinance by transporting firearms in his vehicle. While it was possible for Eric to simply transport firearms in his vehicle in compliance with the Ordinance by unloading and encasing the firearms, Eric explained that he never did that, because he claims transporting an unloaded and encased firearm would have been more detrimental to his safety than transporting no weapon. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 7. Regardless, Eric's compliance with the statute will not suffice to satisfy the credible-threat-of-prosecution test, as compliance removes any threat of prosecution. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 12 (citing *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 548 (10th Cir. 2016). Accordingly, the times that he drove through Shawnee without firearms are irrelevant, as they cannot support standing to bring a claim.

This same flaw is fatal to Eric's novel "prior restraint" theory. While prior restraint is a concept in First Amendment law, such a theory is not

recognized in the Second Amendment context. *Memorandum and Order*

dated 1/5/17, Vol. I, ECF No. 140, at 13. But even if it were recognized, the

prior restraint would be shown through Eric's decision to not keep loaded or

non-encased firearms in his vehicle. Again, Eric's compliance with the statute

will not suffice to satisfy the credible-threat-of-prosecution test. *Id.*

  This leaves only the two times he did travel in Shawnee with loaded,

non-encased firearms in his vehicle, in violation of the Ordinance. The test for

whether these events give Eric standing was stated by the district court.

*Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 12. "Eric's

burden entails 'three showings: that . . . [he] suffered an injury in fact which

is concrete and particularized, and actual or imminent; second, that there is a

causal connection between the injury and the challenged conduct; and third,

that the injury is likely to be redressed by a favorable decision. *Id.* at 8–9

(quoting *Dias v. City and County of Denver*, 567 F.3d at 1176 (citation

omitted).

  The focal point of the district court's inquiry was whether Eric actually

suffered an injury in fact. "On the injury-in-fact requirement in a pre-

enforcement setting, the Supreme Court has said there must be,

'circumstances that render the threatened enforcement sufficiently imminent,'

and the plaintiff must demonstrate, (1) 'an intention to engage in a course of

conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute,' and (2) 'there exists a credible threat of prosecution thereunder.'" *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 11–12 (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014)). This turns the focal point of the standing inquiry to whether Eric faced a credible threat of prosecution.

But Eric did not provide any evidence that he faced a credible threat of prosecution during either of those two trips. "The facts are uncontroverted that Eric was never stopped, threatened with arrest, arrested, charged or prosecuted under the ordinance. There is nothing about the circumstances of Eric's occasional travels in the City that makes enforcement of this ordinance against him a credible threat. Eric's alleged injuries are merely conjectural and hypothetical and will not satisfy the injury-in-fact requirement." *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 13.

It is worth noting, one of Eric's oft-repeated complaints in his argument on standing is that the district court focused on the wrong "point-in-time" in determining when the injury in fact occurred. Eric alleges the determinative "point-in-time" was immediately *before* he left his property in his vehicle, presumably the point in time at which he removed the firearms from his vehicle or refrained from putting them in his vehicle when he otherwise

would have. Appellants' Br. at 28. Paradoxically, this argument makes his

lack of standing even clearer, as the threat of arrest is even more conjectural

when he is standing in Williamsburg, Kansas, both geographically and

temporally removed from any possible place or time of enforcement.

Because Eric is unable to satisfy the injury-in-fact requirement for

standing, he lacks standing to bring his claim.

### B.    The Ordinance was constitutional as it was applied to Jonathan Clark.

Counts 2–4 are all alleged violations of Jonathan Clark's constitutional

rights. Count 2 claims the Ordinance violated Jonathan's Second Amendment

rights, through the ticket he received for violating the Ordinance. Count 3

claims the Ordinance violated Jonathan's right to be free from unreasonable

seizure, because his detention on the side of the road was extended due to the

enforcement of the Ordinance. And Count 4 claims the Ordinance violated

Jonathan's right to be free from unreasonable searches, because of the search

of his vehicle for further evidence of his violation of the Ordinance. All three

of these counts are dependent on a finding that the Ordinance violated the

Second Amendment, otherwise, the ticket, search, and seizure were all proper.

Accordingly, we turn to the analysis of whether the Ordinance violates the

Second Amendment. For the following reasons, it does not.

### 1.    Because the Ordinance does not implicate the core right of the Second Amendment, intermediate scrutiny applies.

Before the constitutionality of the Ordinance may be analyzed, the reviewing court must determine the proper level of scrutiny to apply. But if the reviewing court determines that the Ordinance regulated activity *outside* of the scope of the Second Amendment, the activity is unprotected and the inquiry is complete. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 33 (quoting *Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678, 685–86 (6th Cir. 2016)).

Indeed, the district court did determine "there is no Second Amendment right for members of the public to transport loaded and non-encased firearms in their vehicles without a concealed carry permit." *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 36. Put differently, Jonathan failed to show that his circumstances were sufficiently distinguishable "from those of persons historically excluded from Second Amendment protections." *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 36 (quoting *Binderup v. Atty. Gen. U.S. of America*, 836 F.3d 336, 347 (3rd Cir. 2016)).

Even having determined that Jonathan's claim fails to implicate the Second Amendment, the district court went forward with the analysis, assuming *arguendo* that the Ordinance did fall within the scope of the Second

Amendment. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at

36. Making this assumption, the next step is to determine the proper level of

scrutiny to apply.

Intermediate scrutiny has been deemed the appropriate standard by the

Tenth Circuit[13]— and nearly every other circuit[14]—when considering Second

Amendment challenges that do not implicate the issue of self-defense in the

home. Other district courts have stated, "Until the Supreme Court indicates

otherwise, this Court will apply a lower form of scrutiny to laws that merely

regulate, as opposed to proscribe, handgun possession." *United States v.*

*Bledsoe*, No. CRIM SA08-CR13(2)-XR, 2008 WL 3538717, at *3 (W.D. Tex.

---

[13] *See, e.g.*, *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1126 (10th Cir. 2015), cert. denied, 136 S. Ct. 1486, 194 L. Ed. 2d 550 (2016) (finding that the Second Amendment did not apply in a USPS parking lot, but that if Second Amendment rights do exist outside the home, they would be measured by intermediate scrutiny); *Peterson v. Martinez*, 707 F.3d 1197, 1204 (10th Cir. 2013) (affirming district court's application of intermediate scrutiny to concealed carry licensing scheme, but not reaching scrutiny choice, finding that the Second Amendment does not provide right to carry concealed firearm); *United States v. Huitron-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012) (finding intermediate scrutiny would apply to 18 U.S.C. § 922(g)(5)(A), 942(a)(2), prohibiting possession of firearms transported or shipped in interstate commerce); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny to § 922(g)(8), which prohibited Reese from possessing firearms while subject to a domestic protection order).

[14] *See, e.g.*, *Tyler v. Hillsdale Cty. Sheriff's Dep't*, No. 13-1876, 2016 WL 4916936, at *10 (6th Cir. Sept. 15, 2016) (applying intermediate scrutiny to § 922(g)(4)); *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (applying intermediate scrutiny to § 922(g)(9)); *Woollard v. Gallagher*, 712 F.3d 865, 878 (4th Cir. 2013) (applying intermediate scrutiny to concealed carry permit scheme); *Schrader v. Holder*, 704 F.3d 980, 989 (D.C. Cir. 2013) (applying intermediate scrutiny to § 922(g)(1)); *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012) (applying intermediate scrutiny to New York's handgun licensing scheme, which required that applicants demonstrate "proper cause" to obtain a concealed carry license); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 206 (5th Cir. 2012) (applying intermediate scrutiny to ban on handgun sales to persons under 21); *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011) (applying the equivalent of intermediate scrutiny to § 922(g)(9)); *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011) (applying intermediate scrutiny to law prohibiting possession of a loaded handgun in a motor vehicle in national park area); *United States v. Chester*, 628 F.3d 673, 682–83 (4th Cir. 2010) (applying intermediate scrutiny to § 922(g)(9)); *United States v. Williams*, 616 F.3d 685, 692–93 (7th Cir. 2010) (applying intermediate scrutiny to § 922(g)(1)); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) (applying intermediate scrutiny to § 922(k)).

Aug. 8, 2008) (ultimately concluding that 18 U.S.C. 922(a)(6) would be found constitutional under both intermediate and strict scrutiny).

Other circuits have decided that the level of scrutiny in Second Amendment challenges "should depend on (1) 'how close the law comes to the core of the Second Amendment right,' and (2) 'the severity of the law's burden on the right.'" *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)). Because the Ordinance did not come close to the core right of the Second Amendment[15] and did not place any burden on that right, much less a severe burden, intermediate scrutiny should be applied in this case.

The Clarks brief reads as though the district court applied rational basis scrutiny to the analysis of the Ordinance's constitutionality. This is simply not true. "The court concludes that the Ordinance satisfies the intermediate scrutiny standard and prevails against Clark's as-applied challenge on this second prong too. Suffice it to say, this same analysis would necessarily satisfy the rational basis scrutiny as well." *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 42.

---

[15] *Kolbe v. Hogan*, 813 F.3d 160, 168 (4th Cir. 2016), *reh'g en banc granted,* 636 F. App'x 880 (4th Cir. 2016) (the core protection of the Second Amendment is "the right of law-abiding responsible citizens to use arms in defense of hearth and home"); *United States v. Chovan*, 735 F.3d 1127, 1133 (9th Cir. 2013) ("The *Heller* Court suggested that the core of the Second Amendment right is to allow 'law-abiding, responsible citizens to use arms in defense of hearth and home.'") (quoting *Heller*, 554 U.S. at 635, 128 S. Ct. at 2821); *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011) ("the core right of the self-defense of a law-abiding citizen in his home").

When discussing the appropriate level of scrutiny, the Clarks repeatedly use some variation of the phrase, "the exception that swallowed the rule," which is also the title they chose for their entire argument on the issue. This phrase betrays a fundamental misunderstanding of what the levels of scrutiny are: alternatives, rather than exceptions to one another. The phrase is also a misapprehension of what the district court decided, as the district court did not decide that the Ordinance would only pass muster under rational basis. *Id.* Indeed, the district court explicitly stated that intermediate scrutiny would apply, if it assumed the Ordinance did implicate a right that fell within the scope of the Second Amendment. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 36.

The district court also did not feel the scrutiny level to be an open question, finding that this Court's jurisprudence, and that of other circuits, is clear. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 36–37. The district court added, "Intermediate scrutiny is appropriate here, because [the Ordinance] does not burden the core Second Amendment right of responsible, law-abiding citizens to self-defense within their homes and because the burden here, in light of the license exemption, is anything but substantial." *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 37.

The license exemption to which the court referred was the exemption found in the Ordinance for concealed carry permit/license holders, who were exempt from the portion of the Ordinance that Jonathan was charged with violating, meaning permit holders were allowed to transport non-encased and loaded firearms in their vehicles. Despite this seemingly solving their problems with the Ordinance, the Clarks adamantly opposed obtaining such a license.

> **2.    Because the Ordinance advances important government interests by means substantially related to those interests, the Ordinance was constitutional.**

"To pass constitutional muster under intermediate scrutiny, the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective.'" *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 37 (quoting *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010)). It is beyond question that crime control and public safety are "important" interests. *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 38 (quoting *United States v. Huitron-Guizar*, 678 F.3d 1164, 1170 (10th Cir. 2012)). And a perfect fit is not required to advance those interests by substantially related means, just a reasonable fit, or one "that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served."

*Id.* (quoting *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 693 (6th Cir.

2016)). And while the Clarks are quick to point to other people who may not

perfectly exemplify these important objectives, "intermediate scrutiny does

not require a perfect fit between a rule's objective and the circumstances of

each individual subject to the rule." *Id.* at 39 (quoting *Bonidy v. U.S. Postal

Serv.*, 790 F.3d 1121, 1127 (10th Cir. 2015), *cert. denied,* 136 S. Ct. 1486,

194 L. Ed. 2d 550 (2016)).

In addition to the general interests of public safety and crime control,

the Ordinance advances the important interests of safety on the roadways,

such as preventing a loaded gun from accidentally misfiring and striking a

driver (which could then cause a car to lose control and take more lives than

one bullet could on its own). Further, it gives law enforcement officers the

peace of mind that they are not walking up to a vehicle that may contain a

loaded gun. And finally, the fact that the firearms would be both unloaded and

fully encased provides two safeguards to escalation of confrontations on the

road.

And as the district court acknowledged, the City of Shawnee was not

alone in recognizing the interests advanced by the Ordinance. The Kansas

Legislature recognized the need that its cities had to enact such a law, which

is why the Kansas statute explicitly exempted such regulation from a statute

otherwise prohibiting municipal regulation of the transport of firearms. This

shows just how important those interests were not only to the City of

Shawnee, but to the state legislature.

At the same time, it allows someone who truly needs a firearm for their

own protection to be only seconds away from being able to employ deadly

force when necessary. If Eric were truly fearful for his life and felt a firearm

was the only way he could protect himself, he would not have simply refused

to carry a firearm at all. He could have placed an unloaded pistol and a fully

loaded magazine in a carrying case within his reach. Had he, or anyone else,

done that, it would only take seconds to open the case (there was no

requirement it be locked), slide the magazine into the pistol, and rack the

pistol's slide. Or, if even those few seconds were somehow too burdensome,

the Clarks could have simply obtained a concealed carry permit. As the

district court said, the permit exemption makes the burden of the Ordinance

"anything but substantial." *Memorandum and Order* dated 1/5/17, Vol. I,

ECF No. 140, at 37.

In the most factually similar case the City found, the Fourth Circuit

examined a challenge to a ban on possessing loaded firearms in motor

vehicles in national parks. *United States v. Masciandaro*, 638 F.3d 458, 460

(4th Cir. 2011). Concluding that safety of national parks patrons is a

substantial government interest and that the law was reasonably adapted to

that interest, the court observed, "[N]ational parks patrons are prohibited from

possessing *loaded* firearms, and only then within their motor vehicles."

*Masciandaro*, 638 F.3d at 473. The court went on to recognize that "[l]oaded

firearms are surely more dangerous than unloaded firearms, as they could fire

accidentally or be fired before a potential victim has the opportunity to flee,"

as well as the fact that the lawmakers "could have reasonably concluded that,

when concealed within a motor vehicle, a loaded weapon becomes even more

dangerous." *Id.* In that respect, the Fourth Circuit said that such a prohibition

"is analogous to the litany of state concealed carry prohibitions specifically

identified as valid in *Heller.*" *Id.* at 473–74. All of those points apply with

equal force to the Ordinance and members of the public who were on

Shawnee's roads and highways and strongly support both the imposition of

intermediate scrutiny if the analysis progresses this far, and the finding that

the Ordinance was constitutional.

Importantly, the Fourth Circuit recognized, "By permitting park patrons

to carry unloaded firearms within their vehicles, § 2.4(b) leaves largely intact

the right to 'possess and carry weapons in case of confrontation.'" *Id.* at 474

(quoting *Heller*, 554 U.S. at 592, 128 S. Ct. at 2797). This, too, was equally

true of the Ordinance. The court ultimately concluded that the law prohibiting

the carry or transport of loaded firearms inside of a vehicle in national parks was a "narrow prohibition [that] is reasonably adapted to that substantial governmental interest." *Id.* at 473.

In response to Masciandaro's argument that armed self-defense needs to be *immediately* available, the same argument the Clarks make here, the court said, "[w]hile it is true that the need to load a firearm impinges on the need for armed self-defense, intermediate scrutiny does not require that a regulation be the least intrusive means of achieving the relevant government objective, or that there be no burden whatsoever on the individual right in question." *Id.* (citing *United States v. Baker,* 45 F.3d 837, 847 (4th Cir. 1995); Volokh, *Implementing the Right for Self–Defense,* 56 U.C.L.A. L. Rev. at 1518–19). The court also suggested that lawmakers could conclude that the need for armed self-defense is less acute in national parks than in a home, because the United States Park Police patrol the area. *Id.* This same observation would apply to roads and highways, as the Kansas Highway Patrol and local police patrol those areas.

### 3.    The Clarks do not have the right to a decision from this Court on hypotheticals not at issue in this case.

Finally, the Clarks erroneously attempt to make several as-applied challenges to the Ordinance, examining how it *could* have been applied to

other people. This includes the homeless, RV owners, and people with guns on gun racks in the back of pickup trucks.

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *United States v. Platte*, 401 F.3d 1176, 1187 (10th Cir. 2005) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)). "The overbreadth doctrine creates an exception to this general rule by permitting litigants 'to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *United States v. Platte*, 401 F.3d 1176, 1187–88 (10th Cir. 2005) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)).

As this Court is aware, an overbreadth challenge is not even recognized outside of the context of the First Amendment. *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697 (1987). In *Masciandaro*, when a *pro se* plaintiff raised an overbreadth challenge to a

federal regulation prohibiting the possession of a firearm in a national park, the Fourth Circuit refused to entertain the "novel notion that an overbreath [sic] challenge could be recognized 'outside the limited context of the First Amendment.'" *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697 (1987)).

Here, there are no issues before this Court regarding homeless individuals attempting to defend their home (i.e., "the public sphere"), RV owners, gun racks on the back of pickup trucks, or any other hypotheticals the Clarks wish to examine. Because the Ordinance was applied constitutionally to Jonathan, and because Jonathan cannot stand in the shoes of any individual whom he chooses, Jonathan's hypothetical challenges fail.

### 4. The Ordinance does not violate the equal protection clause or due process.

The district court called the Clarks' equal protection claim "unusual," which was an apt descriptor. This claim is essentially stating that the concealed carry permit exemption is unfairly discriminatory, because it requires those who already have training with firearms to obtain a concealed carry permit (which necessarily involved further training). The Clarks allege that this also unfairly discriminates against non-resident travelers who would not have the opportunity to obtain a concealed carry permit. Because the

Clarks claim residency in Kansas, they lack standing to bring an equal protection claim on behalf of non-residents.

This leaves only the concern that those with permits are treated differently than those without. The Clarks' sole focus in this area is that those with a great familiarity with guns are similarly situated to those with concealed carry permits. This comparison misses the mark. "Besides the completion of a safety and training course, the licensing requirements also addressed qualifications related to residency, federal or state prohibitions on firearm handling, age, criminal history, and mental health findings." *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 19. To mount a successful equal protection challenge, the Clarks need to show that two groups are being treated differently, despite being similarly situated in all relevant respects. But the only similarity they have alleged is a hypothetical familiarity with guns, potentially through hunting, potentially through military training. The Clarks fail to show the requisite similarity between the two groups, so this challenge must fail.

The Clarks' due process argument suffers from similar issues. Here, they complain that the process to obtain a concealed carry permit burdens anyone who already has requisite training and experience. For the same

reasons stated above, this misses the mark and inadequately states the purposes of the concealed carry permit program.

### C.    The Ordinance was constitutional on its face and was not preempted by Kansas law.

The Clarks seek to void the Ordinance under any and all sets of facts in two ways: (1) by claiming it was preempted by Kansas law, and (2) through a facial challenge to the Ordinance's constitutionality. The City will address the two in that order.

If this Court does decide that Jonathan's facial challenge should be analyzed, Jonathan faces a heavy burden. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697 (1987).

### 1.  The Ordinance was not preempted by Kansas law.

The City agrees with the quotation cited by the Clarks: "A city ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute, or unless the legislature has clearly preempted the field so as to preclude municipal action." *Moore v. City of Lawrence*, 232 Kan. 353, 357, 654 P.2d 445, 449 (1982) (citing *Claflin v. Walsh*, 212 Kan. 1, 7, 509 P.2d 1130, 1135 (1973)). Because the Ordinance

does exactly what is allowed by the statute, there is no reasonable argument that an actual conflict exists. The Ordinance "does not authorize something that the statute forbids and it does not forbid something that the statute authorizes." *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 16. The Clarks presented no evidence that the legislature had preclude municipal action through clear field preemption. Indeed, because the Kansas statute at issue expressly authorized the municipal action taken, the Clarks cannot even reasonably allege that the legislature attempted to preempt the field.

On December 2, 2013, KAN. STAT. ANN. § 12–16,124 read, in pertinent part: "Nothing in this section shall . . . prohibit a city or county from adopting an ordinance, resolution or regulation requiring a firearm *transported in any air, land or water vehicle to be unloaded and encased in a container which completely encloses the firearm . . . .*"

On that same day, the Ordinance read, in pertinent part: "Criminal Possession of a Firearm is an unlawful act that is prohibited within the City. Criminal Possession of a Firearm is . . . *Transporting a Firearm in any air, land, or water vehicle, unless the Firearm is unloaded and encased in a container which completely encloses the Firearm.*"

As the language of the two laws make clear, there was no conflict between the two, and the Ordinance did exactly what was authorized by the statute. Accordingly, the Clarks' preemption argument fails.

As a secondary source of preemption, the Clarks urge that a Kansas Attorney General opinion preempted the Ordinance. The Clarks do not cite to any law that supports the notion that an attorney general opinion may somehow preempt a law, which would necessarily grant judicial powers to each state's attorney general. The Clarks do not venture to explain how this incredible mixing of the three branches of government could stand. Indeed, Kansas Attorney General opinions are advisory in nature and even those requesting them need not follow them.

Accordingly, the Ordinance is not preempted by either the Attorney General's opinion or the Kansas statute, which directly authorizes the regulation effected by the Ordinance.

> ### 2.  The Clarks fail to carry the heavy burden of a facial challenge to the Ordinance.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697 (1987). This means that if the Ordinance can be lawfully applied to Jonathan,

as argued above, then a facial challenge is automatically defeated, because that would mean a set of circumstances existed under which the Ordinance was valid. The Clarks do not show that there are no set of circumstances under which the Ordinance would be valid, thus failing to carry their "heavy burden." *Id.* Rather, the Clarks seem to argue that their facial challenge is supported by the Ordinance's inapplicability to certain hypothetical individuals, such as the "members of the people's militia." *Memorandum and Order* dated 1/5/17, Vol. I, ECF No. 140, at 21. As the district court stated, "The plaintiff does not even attempt to show the Ordinance to be lacking any lawful application. Instead, the plaintiff wants to show the statute is overbroad in not exempting militia and in implicating home possession." *Id.*

A facial challenge carries a heavy burden. The Clarks have not even attempted to meet that burden here. The Clarks do not even attempt to show that the Ordinance could not be lawfully applied to anyone. Instead, they focus on how it may apply to individuals in hypotheticals that have nothing to do with the facts of this case. Because the Clarks fail to even attempt to comply with this burden, and because the Ordinance was constitutionally applied to Jonathan, the facial challenge must fail.

## <u>CONCLUSION</u>

Eric Clark had no standing to bring his claims. He was not charged with violating the Ordinance. The Ordinance was repealed before he filed suit, so he faced no ongoing threat of being charged with violating the Ordinance. Indeed, there is no threat that under current Kansas law that the Ordinance could be reenacted.

Jonathan's challenges fail on more than one level. First, the Ordinance did not even implicate the Second Amendment. Second, if the Ordinance did implicate the Second Amendment, this Court should apply intermediate scrutiny to Jonathan's challenges, under which the Ordinance should be found constitutional. Third, if the Ordinance did implicate the Second Amendment *and* this Court decides it should apply strict scrutiny, the Ordinance should still be found constitutional.

## STATEMENT REGARDING ORAL ARGUMENT

The Court should not grant oral argument. This appeal is able to be ruled on based solely on the parties' briefs and it is the City's sincere belief that oral argument would likely not aid the Court in its decision. The City believes that oral argument would be seen by the Clarks as an opportunity to address new issues that were not able to be included in the briefing, due to their denied request to submit a brief more than four times the length allowed by FED. R. APP. P. 32.

Based on the City's experience in this case, Eric Clark would almost certainly argue the case on behalf of the Clark. He has done almost all, if not all, of the communicating on behalf of Plaintiffs since the outset of the case. While the City does not mean to disparage Mr. Clark, it feels compelled to point out that as recently as 2015, Mr. Clark refused to recognize a court's authority and disobeyed repeated requests for order in the court, causing such a scene that he was held in contempt of court. *City of Williamsburg v. Clark*, 379 P.3d 1155 (Kan. Ct. App. 2016). This is brought to the Court's attention not to impugn Mr. Clark, but to ensure that the Court is made aware of past behavior that may impact oral argument before making a decision on whether to hold oral argument in this case.

Respectfully submitted,
FISHER, PATTERSON, SAYLER & SMITH, L.L.P.

/s/ Christopher B. Nelson
Michael K. Seck, #11393
Christopher B. Nelson, #25548
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas  66210
(913) 339-6757 / Fax: (913) 339-6187
mseck@fisherpatterson.com
cnelson@fisherpatterson.com
Attorneys for Appellee

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B)(i) because this brief contains 8,059 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

I further certify this brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman, size 14 typeface in Microsoft Word 2016 and was converted to Portable Document Format (Adobe PDF).

I further certify that all required privacy redactions have been made.

I further certify that the hard paper copies of Brief of Appellee are exact copies of the ECF-filed brief.

I further certify that the ECF submission was scanned for viruses with the most recent version of Trend Micro Security Agent, version 13.395.00, last updated 5/10/2017, a commercial virus scanning program, and the PDF version of the brief is free of viruses.

Date: May 10, 2017            Respectfully submitted,
                             FISHER, PATTERSON, SAYLER & SMITH, L.L.P.

                             /s/ Christopher B. Nelson
                             Michael K. Seck, #11393
                             Christopher B. Nelson, #25548
                             51 Corporate Woods, Suite 300
                             9393 West 110th Street
                             Overland Park, Kansas  66210
                             (913) 339-6757 / Fax: (913) 339-6187
                             mseck@fisherpatterson.com
                             cnelson@fisherpatterson.com
                             Attorneys for Appellee

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that the foregoing Brief of Appellee was filed electronically with the Clerk of the U.S. Court of Appeals for the Tenth Circuit on May 10, 2017. The undersigned hereby further certifies that an original and seven copies were delivered via overnight delivery with FedEx, to:

> Clerk of the United States Court of Appeals
> United States Court of Appeals for the Tenth Circuit
> Byron White United States Courthouse
> 1823 Stout Street
> Denver, Colorado  80257

I hereby certify that on May 10, 2017, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following and further certify that two copies of Brief of Appellee were deposited on May 10, 2017, in the United States mail, postage prepaid, addressed to:

> Eric S. Clark (Appellant)          Jonathan Clark (Appellant)
> 1430 Highway K 273                 6800 Maurer Road
> Williamsburg, KS  66095            Shawnee, KS  66217

> Respectfully submitted,
> FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
>
> /s/ Christopher B. Nelson
> Michael K. Seck, #11393
> Christopher B. Nelson, #25548
> 51 Corporate Woods, Suite 300
> 9393 West 110th Street
> Overland Park, Kansas  66210
> (913) 339-6757 / Fax: (913) 339-6187
> mseck@fisherpatterson.com
> cnelson@fisherpatterson.com
> Attorneys for Appellee